**Linda S. BABB, Plaintiff-Appellee,**

v.

**Paul MINDER and Carter-Jones Lumber Company, an Ohio Corporation, Defendants-Appellants.**

**No. 85–2533.**

United States Court of Appeals, Seventh Circuit.

Argued April 4, 1986.

Decided Nov. 21, 1986.

Ivan L. Schraeder, Jefferson City, Mo., for defendants-appellants.

Joseph C. Honan, Bloomington, Ill., for plaintiff-appellee.

Before WOOD and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

This diversity action arose when defendant Paul Minder, a manager for defendant Carter-Jones Lumber Compan ("Carter-Jones"), in a conversation with Lindell Frasure, Linda Babb's immediate supervisor, allegedly slandered plaintiff Babb. Babb sued Minder and Carter-Jones for defamation. The jury found for Babb and awarded her $10,000 compensatory and $15,000 punitive damages. Both defendants appeal from the district court's denial of their motion for a new trial or for a judgment notwithstanding the verdict. We affirm.

## I. FACTS

Babb was employed in Heyworth, Illinois, at Carter Lumber Company, a wholly-owned subsidiary of Carter-Jones, an Ohio corporation. On July 5, 1983, Babb's supervisor, Frasure, informed her that her employment was terminated because of her unprofessional conduct on the job. Specifically, Frasure stated that Minder, manager of Carter Lumber, wanted Babb fired because she had "mooned" one employee and had offered sexual favors to another. Frasure testified that Minder had not indicated to her which employee had allegedly been "mooned," but that she knew the identity of the employee from rumors. Frasure filled out a notice of termination, checking as the reason for termination "do not need." Frasure sent the notice to Ohio, but did not send a copy of the notice to the president of Carter Lumber. Frasure also testified that Minder informed her that his decision to discharge plaintiff was final and that it would do no good for either Frasure or Babb to argue about it.

Minder, also the general manager and assistant vice-president of Carter-Jones, at that time was on loan to Carter Lumber to manage the Heyworth facility. Minder remained in Ohio and performed his management duties for Carter Lumber by telephone. Carter Lumber reimbursed Carter-Jones for Minder's services. As manager for Carter Lumber, Minder was responsible for overseeing, hiring, and firing Heyworth employees.

Mark Melgosa, a yard foreman at Carter Lumber, testified that he had heard a rumor that Babb had exposed her bare buttocks to another employee, Larry Middleton. Melgosa confronted plaintiff, but she denied the "mooning" incident ever occurred. Melgosa informed Minder in a telephone conversation about the rumor. There was also a separate suggestion that Babb had offered Melgosa sexual favors in return for a job for her father-in-law.

On July 6, the day after plaintiff was fired at Minder's direction, Melgosa and Middleton each sent handwritten memos to Minder. Melgosa's memo stated that he had heard a rumor about the "mooning" incident and that when he asked Babb what happened she demonstrated by showing him the "top part of her posterior." At the time Melgosa sent this memo, however, he had not talked to Middleton about the alleged incident.

Also on July 6, Babb sent a letter to Minder after trying unsuccessfully to reach him by telephone. In the letter, Babb denied that either of the two alleged unprofessional acts with Middleton or Melgosa had occurred. She also stated in the letter that she could produce written statements from witnesses to support her denials. Babb stated further that she had not been notified prior to her termination of any wrongdoing. She asked that Minder reconsider his decision, reinvestigate the incidents, or at least provide her with a more detailed explanation of her discharge.

On July 13 Melgosa sent a typed memo to Minder stating that he had spoken to Babb and Middleton and that he believed Babb had done the "mooning." The memo also stated that Babb showed Melgosa what she had done. Middleton also sent Minder a typed memo describing the alleged incident. Minder had directed both Melgosa and Middleton to type up their prior handwritten memos, with another person assisting them in making the memos more professional, or they would lose their jobs.

At trial, Middleton testified that the allegations against Babb were untrue and that he had signed the memo out of fear of losing his job. Melgosa also testified that Babb never offered to have sex with him in return for a job for her father-in-law.

After the jury trial, in which the jury found for Babb and awarded her compensatory and punitive damages, defendants filed a post-trial motion for judgment n.o.v. or for a new trial. The district court denied the motion and refused to reduce both the actual and the punitive damages.

## II. STANDARDS OF REVIEW

Even though in reviewing a trial court's disposition of a motion for a new trial in a diversity case we apply federal law, and overturn the motion's denial only where the circumstances reveal a clear abuse of discretion, *Thor Power Tool Co. v. Weintraub*, 791 F.2d 579, 582 (7th Cir.1986), in diversity actions we apply state law to dispositions of a motion for judgment notwithstanding the verdict. Under Illinois law a judgment notwithstanding the verdict is properly granted by a trial court, and we apply the same standard on review, only when the evidence is so overwhelmingly in favor of the movant that no contrary verdict based on the evidence could ever stand. *Id.* at 583.

## III. DISCUSSION

Defendants argue that the court should have entered a judgment n.o.v. for them because no actionable defamation occurred. Alternatively, the defendants contend that a new trial is warranted because the court refused to give defendants' "innocent construction" instruction to the jury. Finally, defendants argue as a third alternative that the punitive damages award must be set aside and that the actual damages must be reduced.

### A. Agency Relationship

Defendant Carter-Jones argues that the district court erred in not granting a judgment n.o.v. in its favor based on the lack of an agency relationship between it and defendant Minder.

The evidence at trial on the agency issue, however, was not so overwhelmingly in favor of Carter-Jones that no contrary verdict based on that evidence could ever stand. Under Illinois law, an employer is liable for the willful, malicious, negligent, or criminal acts of its employees if the acts furthered the employer's business and were performed in the course of employment. *Bremen State Bank v. Hartford Accident & Indemnity Co.*, 427 F.2d 425, 428 (7th Cir.1970). If an employee is not acting as the employer's agent, however, the employer is not liable for the employee's actions. In this case, Carter-Jones claimed that it "loaned" Minder to Carter Lumber and therefore cannot be liable for Minder's acts while he was acting only for Carter Lumber. *Mosley v. Northwestern Steel & Wire Co.*, 76 Ill.App.3d 710, 31 Ill.Dec. 853, 859–60, 384 N.E.2d 1230, 1236–37 (1st Dist.1979).

■ Carter-Jones's claim required the jury to apply the Illinois loaned-employee doctrine. Under this doctrine the jury had to determine if Carter-Jones's "loaning" of Minder was to such an extent that Minder actually became an employee of Carter Lumber. This determination is made by looking at a number of factors, including actual control, the employee's consent, and power to discharge. *Id.*

Minder's supervisor at Carter-Jones, Jerome Lesnick, testified that he made a verbal agreement with Bryan Carter, the president of Carter Lumber, to loan Minder to Carter Lumber. Lesnick stated that he relinquished all control over Minder to Bryan Carter while Minder was managing the Heyworth facility. Lesnick also testified that while Minder managed the Heyworth facility he did not control Minder and that Minder's work at Heyworth was performed for Carter Lumber, not for Carter-Jones. Lesnick also stated, however, that Minder was not a party to the agreement with Bryan Carter and that Minder never consented to the loan of his services to Carter Lumber. Furthermore, Minder re-

mained at Carter-Jones's facility in Sunbury, Ohio, and performed his duties for Carter Lumber by telephone. Minder rarely travelled to Heyworth. Although Carter-Jones assessed a fee from Carter Lumber for Minder's services, Minder was actually paid by Carter-Jones, as Minder's income tax forms for 1983 indicate. Carter-Jones never presented evidence that Carter Lumber had any authority to discharge Minder or that Bryan Carter exercised control over Minder's personnel decisions for the Heyworth plant.

On these facts adduced at trial, the evidence does not so overwhelmingly favor defendant Carter-Jones's loaned-employee claim that a contrary verdict could never stand. The district court's denial of defendants' motion for a judgment n.o.v. on the agency issue was therefore appropriate.

### B. Qualified Privilege

Defendants assert as a further defense that the district court erred in refusing to find as a matter of law that defendant Minder had a qualified privilege. Defendants' related claim is that plaintiff did not produce sufficient evidence to overcome Minder's privilege.

A qualified privilege is an affirmative defense to a defamation claim. *Fascian v. Bratz,* 96 Ill.App.3d 367, 51 Ill.Dec. 901, 904, 421 N.E.2d 409, 412 (3d Dist.1981). The existence of such a privilege is a question of law for the court to decide. *Myers v. Spohnholtz,* 11 Ill.App.3d 560, 297 N.E.2d 183, 188 (1st Dist.1973). The elements of a qualified privilege are: (1) good faith by the defendant;[1] (2) an interest or duty to be upheld; (3) a statement limited in its scope to that purpose; (4) a proper occasion; and (5) publication in a proper manner and to proper parties only. *Zein-*

*feld v. Hayes Freight Lines, Inc.,* 41 Ill.2d 345, 243 N.E.2d 217, 221 (1968). Once the court decides that a qualified privilege exists, the plaintiff has the burden of showing that the defendant abused and lost the privilege by acting with actual or express malice. *Id.; Roemer v. Zurich Insurance Co.,* 25 Ill.App.3d 606, 323 N.E.2d 582, 587 (1st Dist.1975). The question of whether the defendant abused the privilege is a factual issue for the jury. *Myers,* 297 N.E.2d at 189.

Defendants here contend the trial judge failed to find as a matter of law that defendant Minder had a qualified privilege. The record indicates that the qualified privilege issue arose during the instruction conference. The parties agreed that the existence of a qualified privilege was an issue of law for the court to decide and should not be submitted to the jury through an instruction. Plaintiff's counsel stated that the existence of the privilege was not an issue; rather, the only issue was abuse of the privilege. The court agreed that the issue was one of law, but reserved its ruling. No special interrogatories were submitted to the jury, and the jury returned a general verdict for the plaintiff and awarded punitive as well as compensatory damages. Defendants in their post-trial motion for judgment n.o.v. raised the qualified privilege and abuse of privilege issues. The district court denied defendants' motion without a written opinion.

■ The district court's resolution of the privilege issue would have been clearer if the district judge had expressly ruled on the issue before or during the trial instead of reserving his ruling. At the instruction conference, the judge indicated his belief that a qualified privilege existed as was conceded by plaintiff, but reserved his formal ruling until after the trial. The judge

---

1. The existence of good faith, as an element of a qualified privilege, is an issue of law for the court. A separate factual question for the jury focuses upon actual or express malice, which indicates abuse of the privilege. Once the court decides that the privilege exists, then the jury must decide whether the plaintiff has shown actual or express malice. *Myers,* 297 N.E.2d at 189 (pointing out that good faith as an element of a qualified privilege should not be confused with the actual or express malice which constitutes abuse of the privilege); *see Spencer v. Community Hospital of Evanston,* 87 Ill.App.3d 214, 42 Ill.Dec. 272, 278, 408 N.E.2d 981, 987 (1st Dist.1980).

was aware of the issue and was aware of the relevant law as the parties discussed the issue at length during the instruction conference. In any event defendants effectively had the protection of the privilege at trial as the jury was instructed it had to find actual malice to find the defendant abused his privilege and to sustain an award of punitive damages. In fact, the jury implicitly did find actual malice because it awarded punitive damages and thereby necessarily found also that defendant Minder had abused his qualified privilege. The judge, by denying the post-trial motion, also necessarily decided that the evidence supported the jury verdict, including the finding of actual malice necessary to overcome a qualified privilege and to support punitive damages. *Myers,* 297 N.E.2d at 188–90.

Looking to the record, the facts in this case support the jury's and the district judge's resolution of the privilege issue by establishing that defendant Minder's communication to plaintiff's on-site supervisor was conditionally privileged.

The first element of a conditional privilege is defendant's good faith. "A reviewing court will look at several sources in determining whether defendants acted in good faith: the face of the report, the occasion on which it was written, conduct of defendants in connection with the report, and the relationship between the publishers and recipients." *Spencer v. Community Hospital of Evanston,* 87 Ill.App.3d 214, 42 Ill.Dec. 272, 278, 408 N.E.2d 981, 987 (1st Dist.1980). In this case, with oral statements at issue, the statements in and of themselves do not indicate bad faith. The occasion of ordering an employee's discharge is a legitimate setting for explaining the reasons for the discharge.

As for the second element, defendant Minder had a duty to uphold. Minder, as acting manager of the Heyworth facility, had a duty to discipline workers to enforce company standards of conduct. Minder made the statements about Babb to effectuate Babb's discipline. *See Jones v. Britt Airways, Inc.,* 622 F.Supp. 389, 392 (N.D. Ill.1985) ("An employer unquestionably has an interest in investigating suspicious conduct by employees within his company.").

With respect to the third element, Minder's statements were sufficiently limited in scope. An employer is entitled to convey to his supervisor the circumstances surrounding the discharge of an employee under that supervisor's direction. Minder made the statements about Babb to explain to his supervisor the reasons underlying Babb's discharge.

Finally, the fourth and fifth elements were satisfied as to the appropriateness of the occasion, manner of publication, and parties involved. Minder communicated the statements over the telephone to the only party who needed to know, Babb's immediate supervisor, Frasure, who subsequently notified Babb of her discharge.

To hold that Minder had a qualified privilege, however, does not mean that Minder's freedom to say whatever he wished about Babb was unfettered. As its name suggests, a qualified privilege is not an absolute privilege. It may be lost under Illinois law if the plaintiff proves that the defendant abused the privilege. Thus, the existence of a qualified privilege puts the burden on the plaintiff to prove actual or express malice to overcome the privilege, even though the statements are slanderous *per se. Zeinfeld v. Hayes Freight Lines, Inc.,* 41 Ill.2d 345, 243 N.E.2d 217, 221 (1968); *Colson v. Stieg,* 86 Ill.App.3d 993, 42 Ill.Dec. 53, 57, 408 N.E.2d 431, 435 (2d Dist.1980), *aff'd,* 89 Ill.2d 205, 60 Ill.Dec. 449, 433 N.E.2d 246 (1982); *see Roemer v. Zurich Insurance Co.,* 25 Ill.App.3d 606, 323 N.E.2d 582, 587 (1st Dist.1975). Illinois courts have described the malice requirement in various, although sometimes inconsistent ways. *See, e.g., Myers,* 297 N.E.2d at 189 (explaining malice exists, and subsequent abuse of qualified privilege occurs, if publisher does not believe defamatory statement is true or has no reasonable grounds for believing it is true); *Fascian v. Bratz,* 96 Ill.App.3d 367, 51 Ill.Dec. 901, 903–04, 421 N.E.2d 409, 411–12 (3d Dist.1981) (citing *Myers, supra*) (holding

no malice exists on defendants' part when plaintiff fails to prove bad faith or improper motive); *Colson*, 42 Ill.Dec. at 57, 408 N.E.2d at 435 (holding to overcome privilege plaintiff must prove actual malice, which is knowledge of falsity or reckless disregard for truth or falsity of defamatory statement, by demonstrating defendant abused privilege by not believing defamatory statement or by not having reasonable grounds for belief); *American Pet Motels, Inc. v. Chicago Veterinary Medical Association*, 106 Ill.App.3d 626, 62 Ill. Dec. 325, 330, 435 N.E.2d 1297, 1302 (1st Dist.1982) ("[A]ny defendant harboring '*New York Times* malice' (knowledge or reckless disregard of falsity) also lacks good faith and, therefore, loses any conditional privilege he may have had under State law.") (referring to legal test formulated in *New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964)).

Illinois apparently has adopted the *New York Times* definition of actual malice, knowledge of falsity or reckless disregard for truth or falsity, and has merged common law malice, ill will or evil motive, into that standard. *Fopay v. Noveroske*, 31 Ill.App.3d 182, 334 N.E.2d 79, 91 (5th Dist. 1975); *see Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 535 n. 13 (7th Cir.1982) (applying Illinois law in a diversity defamation case), *cert. denied*, 459 U.S. 1226, 103 S.Ct. 1233, 75 L.Ed.2d 467 (1983); *Jones v. Britt Airways, Inc.*, 622 F.Supp. 389, 392–93 (N.D. Ill.1985); *cf. Newell v. Field Enterprises, Inc.*, 91 Ill.App.3d 735, 47 Ill.Dec. 429, 436–37, 415 N.E.2d 434, 441–42 (1st Dist.1980) (discarding *New York Times* actual malice test, to overcome common law privilege to report on judicial proceedings, and substituting instead "objective test of whether the libelous writing carries a greater sting than does the language found in the judicial proceeding being reported"); *see generally* Note, *Reports Upon Public Proceedings and Documents: Absolutely Protected by Constitutional Privilege*, 1985 U.Ill.L.Rev. 1063, 1075–83 (describing common law malice and *New York Times* malice in cases applying Illinois law).

In any case, neither party objected to the instruction defining actual malice as "knowing falsity or reckless disregard of the truth or falsity of a defamatory statement." [2] Court's Instr. No. 32. The court also properly instructed the jury that "to establish recklessness, the plaintiff must prove that the defendants had a high degree of awareness of the probably [sic] falsity of the statements published." Court's Instr. No. 35. *See Gertz*, 680 F.2d at 538; *Catalano v. Pechous*, 83 Ill.2d 146, 50 Ill.Dec. 242, 251, 419 N.E.2d 350, 359 (1980), *cert. denied*, 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981); *Newell*, 47 Ill.Dec. at 446, 415 N.E.2d at 451. Furthermore, under Illinois law proving *New York Times* actual malice satisfies the common law malice standard. *Fopay*, 334 N.E.2d at 92.

To prove *New York Times* actual malice it is necessary to focus on the defendant's conduct and state of mind. *Gertz*, 680 F.2d at 538. "[R]eckless conduct may be evidenced in part by failure to investigate thoroughly and verify the facts ... particularly where the material is peculiarly harmful or damaging to the plaintiff's reputation or good name." *Fopay*, 334 N.E.2d at 88; *see Gertz*, 680 F.2d at 539 n. 19. Although it is an important consideration, failure to investigate alone is not enough. *Fopay*, 334 N.E.2d at 88. "[I]mplicit in this statement is the requirement that

**2.** Plaintiff argues on appeal that it is unnecessary to show actual malice to overcome a conditional privilege in Illinois. Plaintiff claims that a defendant may lose a privilege by saying more than is necessary or by not having reasonable grounds to believe the defamatory statement is true. Plaintiff then states that assuming a showing of actual malice is necessary, "it can be made by showing the defendant knew the statements were false or that he made the disparaging statements in reckless disregard of their falsity." Brief of Appellee at 15. It is well-settled that the plaintiff establishes abuse of a qualified privilege by proving actual malice. *Zeinfeld*, 243 N.E.2d at 221. And, as plaintiff accurately states, actual malice sufficient to overcome a qualified privilege is knowledge of falsity or reckless disregard for the truth or falsity of the statement. *Gertz*, 680 F.2d at 535.

there must be some justification for the failure to investigate," *id.*, especially " 'where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.' " *Gertz*, 680 F.2d at 538 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 732, 88 S.Ct. 1323, 1326, 20 L.Ed.2d 262 (1968)) (emphasis omitted). As explained by one Illinois court:

> Application of the actual malice standard requires that we first find an awareness by the defendant of the potentially harmful effect of the publication upon the plaintiff and the concomitant need for thorough investigation to insure that the publication is true.

*Fopay*, 334 N.E.2d at 90.

■ Defendant Minder was definitely aware of the seriousness of the allegations as he used them to justify dismissing plaintiff. The allegations not only cost Babb her job but they also were potentially, and were in fact, harmful to plaintiff in a social context because of the familial atmosphere prevailing at the Heyworth facility and in the town of Heyworth generally. Considering the seriousness of the allegations against Babb and their potential for harm, "[w]e must now examine more closely the adequacy of the support for the allegations and the thoroughness of the investigation in terms of the utilization of available sources of information and the credibility of sources used." *Fopay*, 334 N.E.2d at 90. The evidence adduced at trial indicates that Minder acted with reckless disregard of the truth or falsity of the defamatory statements and thus supports the jury finding of actual malice.

Defendants assert that Minder conducted an investigation into the alleged "mooning" incident which resulted in the allegation being confirmed verbally and in writing twice by two different employees. Defendants contend that when Minder made the statement he reasonably relied on the investigation and the facts available, namely, a verbal confirmation of the incident and two written statements by the on-site supervisor and two written statements by the employee who supposedly witnessed the "mooning" incident.

Contrary to defendants' contentions, however, the record and the evidence at trial established that Minder did not have the benefit of the written statements when he spoke to Babb's supervisor. Instead, Minder acted on an unconfirmed rumor about the "mooning" incident conveyed to him off-handedly in one telephone conversation. Minder had more direct evidence of the sexual favors allegation, as the incident allegedly involved the yard supervisor with whom he was speaking. However, defendants do not argue that evidence as support for the other defamatory statements. Indeed, defendants do not even mention that sexual favor allegation in their brief, and only discussed it at oral argument when specifically questioned about it. Once informed of the "mooning" rumor, Minder did not contact plaintiff nor the employee who supposedly witnessed the incident. Minder did not receive any written statements before Babb was fired. The alleged eyewitness eventually sent a lone written statement to Minder a week after Babb's discharge. In effect, Minder made no investigation at all despite the seriousness of the allegations and their great potential for harm. Moreover, Minder ignored the yard supervisor, the source of these allegations, when the supervisor told Minder after Babb's termination that the allegations were untrue. Admittedly, this does not show that Minder knew the statements were false when he made them, because the yard supervisor did not recant until after Minder made the defamatory statements. It does, however, lend support to Babb's contention that Minder acted recklessly in not looking into the situation further before defaming Babb.

Like defendants' loaned-employee claims, their contentions on the qualified privilege issue are not so overwhelmingly supported by the evidence that no contrary verdict could ever stand. The district court's denial of defendants' motion for judgment n.o.v. on this issue thus was proper.

## C. Defamation Per Se

Defendants next contend that the district court should have set aside the jury's award of punitive damages because Minder's statements were not defamatory *per se* and because he did not show actual malice or wanton disregard for the truth.

Illinois law recognizes four categories of words as defamatory *per se* for which special, or pecuniary, damages are presumed: (1) words imputing the commission of a criminal offense; (2) words imputing infection with a communicable disease which, if true, would exclude one from society; (3) words imputing an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words prejudicing a particular person in his profession or trade. *Kirk v. Village of Hillcrest*, 36 Ill.App.3d 1063, 335 N.E.2d 535, 537 (2d Dist.1975). "[A] statement to be [defamatory] *per se* must be not only within the four categories, it must be 'sufficiently defamatory to justify an award of damages without proof of actual damage.'" *Erickson v. Aetna Life & Casualty Co.*, 127 Ill.App.3d 753, 83 Ill.Dec. 72, 78, 469 N.E.2d 679, 685 (2d Dist.1984) (quoting *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 268 (7th Cir.1983)). The defamatory statements must be "so obviously and naturally hurtful to the person aggrieved that proof of their injurious character can be, and is, dispensed with." *Reed v. Albanese*, 78 Ill.App.2d 53, 223 N.E.2d 419, 422 (1st Dist.1966). Words which are not defamatory *per se* may still be actionable if they are defamatory and if special damages are shown.

Illinois law does not allow a defamatory meaning to be imputed by innuendo or explanation. In determining whether language is defamatory *per se*, Illinois courts apply the innocent construction rule. Under this rule,

> a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se*. This preliminary determination is properly a question of law to be resolved by the court in the first instance; whether the publication was in fact understood to be defamatory or to refer to the plaintiff is a question for the jury should the initial determination be resolved in favor of the plaintiff.

*Chapski v. Copley Press*, 92 Ill.2d 344, 65 Ill.Dec. 884, 888, 442 N.E.2d 195, 199 (1982).[3] This rule "has been applied with an emphasis on protecting an individual's interest in vindicating his good name and reputation as well as first amendment interests." *Erickson*, 83 Ill.Dec. at 77, 469 N.E.2d at 684. "If the alleged defamatory matter is ambiguous or if the words are reasonably susceptible of an innocent meaning, then they will be given an innocent construction, and the rule applies to slander as well as libel." *Colson v. Stieg*, 86 Ill.App.3d 993, 42 Ill.Dec. 53, 56, 408 N.E.2d 431, 434 (2d Dist.1980), *aff'd*, 89 Ill.2d 205, 60 Ill.Dec. 449, 433 N.E.2d 246 (1982). The words or statements are not to be viewed in isolation. Instead, "[t]he surrounding circumstances and the events that led to the utterance should be examined very closely and the words judged accordingly." *Cantrell v. American Broadcasting Cos.*, 529 F.Supp. 746, 752 (N.D.Ill. 1981).

Defendants argue that plaintiff did not establish slander *per se*. Defendants contend that Minder's statement that plaintiff

---

**3.** Defendants also contend that this court should overturn the jury verdict and order a new trial because the trial court refused to give an "innocent construction" instruction as the defendants requested. As the discussion above indicates, whether words are capable of being interpreted in an innocent manner is a question of law for the court, not a question of fact for the jury. An "innocent construction" instruction therefore would have been inappropriate. *Cantrell v. American Broadcasting Cos.*, 529 F.Supp. 746, 752 (N.D.Ill.1981). Because the instruction would have been inappropriate, the district court's refusal to give the instruction was obviously not an abuse of its discretion warranting a new trial.

had shown her bare buttocks to another employee does not impute commission of a crime. Defendants point out that in Illinois public indecency requires an "intent to arouse or satisfy the sexual desire;" whereas in this case the witnesses testified that the alleged "mooning" intended nothing more than exposure.

Plaintiff responds that Minder's statements about the "mooning" incident and about her alleged offer of sexual favors impute both the commission of the crime of public indecency and an inability to perform her employment duties. Plaintiff also contends that even if the statements are not defamatory *per se*, her recovery was proper because the statements were false and she lost her job, which establishes special damages. We agree.

"For words imputing the commission of a crime to be libelous per se, the offense must be indictable, involve moral turpitude, and be punishable by incarceration rather than by fine." *Cantrell*, 529 F.Supp. at 755. To constitute defamation *per se*, "the offensive accusation need not state the commission of a crime in terms of art or with the particularity of an indictment." *Zeinfeld v. Hayes Freight Lines, Inc.*, 41 Ill.2d 345, 243 N.E.2d 217, 220 (1968). "There is no general rule defining what words are defamatory and, therefore, each case depends upon its own facts." *Korbar v. Hite*, 43 Ill.App.3d 636, 2 Ill.Dec. 158, 160, 357 N.E.2d 135, 137 (1st Dist.1976), *cert. denied*, 434 U.S. 837, 98 S.Ct. 127, 54 L.Ed.2d 98 (1977).

 With these considerations in mind, we conclude in the particular circumstances of this case that the "mooning" statement sufficiently qualifies as slander *per se*. Defendants advance as an "innocent construction" of the statement that all the witnesses testified that "mooning" meant nothing more than a person's merely showing his bare buttocks. Even this limited interpretation, however, is sufficient to impute commission of the crime of indecent exposure under Illinois law, which is a class A misdemeanor, punishable by imprisonment for any term less than one year.

Ill.Ann.Stat. ch. 38, ¶ 11–9 (Smith-Hurd Supp.1986); Ill.Ann.Stat. ch. 38, ¶ 1005–8–3 (Smith-Hurd 1982). Furthermore, defendants offer no "innocent construction," and we can find none, for the statement that plaintiff offered sexual favors to her yard supervisor. Absent such an innocent construction, this statement imputes a lack of integrity in Babb's discharge of her employment and was thus actionable as slander *per se*.

In short, defendants' contention, that the jury's award of punitive damages was improper because Minder's statements were not defamatory *per se*, is unpersuasive. Thus, the district court's denial of defendants' motion for judgment n.o.v. on this basis was correct.

### D. Damages

 Defendants' final argument is that the jury's award of actual damages is excessive and the award of punitive damages is in error because plaintiff did not show actual malice. Defendants assert that plaintiff established a loss of approximately $1000 in salary and that all other damages alleged by plaintiff were left to the jury's speculation. Under Illinois law, a plaintiff may recover actual or compensatory damages upon showing negligence, but only upon a showing of actual malice may damages be presumed and punitive damages be awarded. *Newell v. Field Enterprises, Inc.*, 91 Ill.App.3d 735, 47 Ill.Dec. 429, 447, 415 N.E.2d 434, 452 (1st Dist. 1980); *Davis v. Keystone Printing Service, Inc.*, 111 Ill.App.3d 427, 67 Ill.Dec. 214, 223, 444 N.E.2d 253, 262 (2d Dist. 1982); *cf. Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 105 S.Ct. 2939, 2949, 86 L.Ed.2d 593 (1985) (White, J., concurring). Because plaintiff proved actual malice, and because Minder's statements were slanderous *per se*, presumed and punitive damages were permissible under Illinois law and under the Constitution. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349, 94 S.Ct. 2997, 3011, 41 L.Ed.2d 789 (1974); *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 540 (7th Cir.1982).

Plaintiff, moreover, did prove actual damages at trial. Plaintiff testified that she was out of work from early July 1983 until September 1983, during which time she drew unemployment compensation for approximately two months. In September she obtained a job that paid an hourly rate of approximately one dollar less than her prior job at Carter Lumber. By early 1984, plaintiff's hourly rate had increased beyond that of her former job. In addition to her wage loss, plaintiff testified about the humiliation, embarrassment, and mental anguish that defendant's statements caused her.[4] All of these losses are compensable in a defamation action, and plaintiff's testimony about her mental suffering was sufficient to uphold the jury's award for actual damages. *Gertz,* 680 F.2d at 540.

Defendants argue that under *Continental Nut Co. v. Robert L. Berner Co.,* 393 F.2d 283 (7th Cir.), *cert. denied,* 393 U.S. 923, 89 S.Ct. 254, 21 L.Ed.2d 259 (1968), plaintiff was required to show her damages "accurately" to recover. In *Continental Nut,* however, the court was faced with determining whether special pecuniary damages had been shown with sufficient specificity to allow recovery for defamation *per quod.* The court found that the evidence was insufficient because the plaintiff allegedly lost profits from specific customers but did not introduce evidence on the dollar amounts of the lost accounts or on whether the defamation actually caused the loss. *Id.* at 286. In this case by contrast, plaintiff's testimony about her wage and nonpecuniary losses was sufficient to support the compensatory damage award as "all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d

789 (1974). Thus, the district court's refusal to reduce both the actual and the punitive damages was appropriate.

Accordingly, we find insufficient grounds in this case to set aside the jury's verdict or its assessment of damages.

The decision of the district court is

AFFIRMED.

---

**4.** At oral argument, defendants' counsel suggested that Babb herself spread the allegations to the town of Heyworth and therefore caused the humiliation and embarrassment herself. Babb testified that she told her husband, mother, sisters, and attorney about the incident. Babb also testified she confirmed to a reporter that she was the person identified in a news article. She testified that "[t]he article was already in the paper when he called me at work to find out if I was in fact the person involved in this lawsuit." This testimony does not indicate that Babb herself was the cause of her damages.