**Ronald D. DAWSON, Plaintiff,**

v.

**NEW YORK LIFE INSURANCE COMPANY and Nylife Securities, Inc., Defendants.**

No. 94 C 1423.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 29, 1995.

Thomas P. Sullivan, Thomas Shane
O'Neill, Jenner & Block, Sherwin H. Leff,
Leff, Cohen & Rosenberg, Ltd., Chicago, IL,
for Ronald D. Dawson.

James Andrew Klenk, Dale M. Cohen, Sal-
ly L. Davis, Sonnenschein, Nath & Rosen-
thal, Chicago, IL, Edwin G. Schallert, Fran-
ces L. Kellner, Debevoise 6 Plimpton, New
York City, for New York Life Ins. Co. and
NYLIFE Securities Inc.

## *MEMORANDUM OPINION AND ORDER*

CASTILLO, District Judge.

This matter is before the Court on plaintiff
Ronald D. Dawson's ("Dawson") motion to
compel from defendants New York Life In-
surance Company and NYLIFE Securities,
Inc. (collectively "New York Life") answers
to certain deposition questions and discovery
of certain documents. For the reasons stat-
ed below, the motion is granted.

### BACKGROUND

In this diversity action, Dawson sues New
York Life alleging that it defamed him in
speeches given by three employees of the
company, in videotaped excerpts of the
speeches disseminated to its general offices
throughout the United States, and in an
Amended Form U–5 document filed with the
National Association of Securities Dealers
("NASD").[1]

---

**1.** The three speakers were Alice Kane, Lee Gam-
mill, and Lyle Paul. The employee who pre-
pared the Amended Form U–5 was Robert Gal-
ler.

A Form U–5 is used by NASD member firms to
notify the association that the employment of a
registered representative has been terminated.

The alleged defamatory statements were made in early March 1993, soon after New York Life suffered a $16 million dollar verdict in a case known as *Hernandez v. New York Life*. The Hernandez case arose from acts of fraud committed by former New York Life agent Oscar Herrera against policyholder Lamar Hernandez when Herrera was an agent in New York Life's Corpus Christi office. Dawson was the general manager of this office until September 1, 1989, during part of the time that the fraudulent acts were committed. Dawson claims that the New York Life speakers accused him of participating in and condoning this fraudulent conduct based on their understanding of the Hernandez trial evidence. Dawson also claims that the Amended Form U–5 prepared by Galler accuses him of condoning fraud against New York Life policyholders Richard and Veronica Cruz and of condoning other unidentified forgeries committed against New York Life policyholders by Agent Herrera.

■ In its answer to Dawson's complaint, New York Life asserted the affirmative defense of qualified privilege to justify each of the statements made about Dawson. Qualified privilege is an affirmative defense to a defamation claim. The elements of the privilege are: (1) good faith by the defendant; (2) an interest or duty to be upheld; (3) a statement limited in its scope to that purpose; (4) a proper occasion; and (5) publication in a proper manner and to proper parties only. *Zeinfeld v. Hayes Freight Lines, Inc.*, 41 Ill.2d 345, 243 N.E.2d 217, 221 (1968). The existence of the privilege is a question of law for the Court to decide. *Babb v. Minder*, 806 F.2d 749, 753 (7th Cir. 1986). Once the Court decides that a qualified privilege exists, the plaintiff has the burden of showing that the defendant abused and lost the privilege by acting with actual or express malice. *Id.* The question of wheth-

er the defendant abused the privilege is a factual issue for the jury. *Id.*

New York Life also moved for summary judgment on the basis of qualified privilege. The resolution of the pending motion for summary judgment has been delayed because Dawson has asked New York Life to produce documents and answer deposition questions concerning the information about the Hernandez trial that was given to the speakers. Dawson has also asked New York Life to answer deposition questions concerning the information that was given to Robert Galler to aid in preparing the Amended Form U–5. Dawson specifically seeks to compel: (1) Communications to and from Alice Kane; (2) Communications to and from Alan Taxerman; (3) Communications from New York Life counsel to Lisa Frazier; (4) Communications to and from Michael McLaughlin; and (5) Communications from New York Life counsel to Lyle Paul and Lee Gammill.[2] New York Life has refused to disclose these communications by claiming they are subject to the attorney-client privilege and work-product doctrine. Dawson argues that there has been an implied waiver of any discovery privileges with regard to these materials because of New York Life's assertion of qualified privilege defenses. Alternatively, Dawson argues that even if a waiver is not found, the communications do not fall within the requirements of the claimed privileges.

**ANALYSIS**

■ At the outset, the Court notes that Dawson's main argument is that New York Life has waived its asserted privileges through its affirmative defenses of qualified privilege. However, because the burden of showing facts that give rise to a privilege rests on the party who claims the privilege, we will first analyze whether New York Life has met this burden before turning to the waiver question. *See Consolidation Coal Co.*

In this case, it was prepared after Dawson was terminated on February 16, 1993.

**2.** At the time of the filing of plaintiff's motion, Kane was General Counsel for New York Life; Taxerman was an attorney in the Office of the General Counsel who attended the Hernandez trial as a corporate representative of New York Life; Frazier was a New York Life speech writer

who was a principal drafter of Kane's speech; McLaughlin was an attorney in the Office of the General Counsel who kept advised of the Hernandez case and participated in the drafting of Kane's speech; Gammill was Executive Vice President of New York Life; and Paul was Senior Vice President of New York Life.

*v. Bucyrus–Erie Co.*, 89 Ill.2d 103, 119, 59 Ill.Dec. 666, 673, 432 N.E.2d 250, 257 (1982) (stating the burden of showing facts that give rise to the attorney-client privilege rests on the one who claims the privilege.); *Chem-Central/Grand Rapids Corp. v. United States EPA*, 1992 U.S.Dist. LEXIS 12539, No. 91 C 4380 at *15 (August 19, 1992) ("As with attorney-client privilege, the party asserting work product immunity has the burden of establishing eligibility for protection.").

### I. Attorney–Client Privilege

New York Life has refused to produce the requested materials by asserting the attorney-client privilege. Although neither party has addressed the issue, the Court must first determine whether federal or state law applies. Under Federal Rule of Evidence 501, in civil actions in which state law provides the rule of decision, state law privileges apply. Because this is a diversity action in which Illinois law supplies the rule of decision, the Court finds that Illinois law on the attorney-client privilege governs.

The Illinois attorney-client privilege generally attaches upon a showing that the communication: (1) originated in a confidence that it would not be disclosed; (2) was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services; and (3) remained confidential. *Hartford Fire Ins. Co. v. PLC Enterprises, Inc.*, 1994 WL 148664 at *2, 1994 U.S.Dist. LEXIS 5228, No. 93 C 6905, at *5 (April 15, 1994).

### 1. Communications from New York Life Attorneys to New York Life Employees.

At least one Illinois Appellate court has held that the attorney-client privilege only covers communications made by the client to the attorney and not by the attorney to the client. *See Dalen v. Ozite Corp.*, 230 Ill.App.3d 18, 171 Ill.Dec. 845, 850, 594 N.E.2d 1365, 1370 (2d Dist.1992). However, we believe that this interpretation of the privilege is too narrow. Instead, we follow the decision in *Hartford Fire Ins. Co.* There, the court expressed its agreement with *Robertson v. Yamaha Motor Corp.*, 143

F.R.D. 194 (S.D.Ill.1992) which stated "it is generally held that the privilege will protect at least those attorney to client communications which would have a tendency to reveal the confidences of the client." This broader interpretation of the privilege is consistent with Illinois Supreme Court Rule 201(b)(2), which defines privileged communications in terms of "communications between a party or his agent and the attorney for his party," not simply in terms of communications from a party or his agent to the attorney. So, the communications from New York Life attorneys requested by Dawson will be privileged if they reveal any confidential communications of New York Life employees.

New York Life cannot show that these communications contain confidential information from the employees, however. It is clear that what Dawson seeks is factual information that the attorneys communicated to the speakers concerning the Hernandez case and to Galler concerning Dawson's role in the fraud against the Cruz policyholders. In her deposition, Frazier explained that she relied upon a memo from the Office of the General Counsel to help her write Kane's speech. Frazier Dep. at 31–32. Gammill and Paul stated that they spoke to New York Life attorneys about the facts of the Hernandez case and about the testimony that related to Dawson. Gammill Dep. at 25–28; Paul Dep. at 95–97, 102. Kane stated that she received both memoranda and oral reports from other New York Life attorneys to help keep her informed of the Hernandez proceedings and about evidence introduced concerning Dawson. Kane Dep. at 21, 25, 30–32, 87–88. Galler stated that he spoke to Taxerman to obtain factual information to aid in completing the Amended Form U–5. Galler Dep. at 100–01. The common link is that these employees contacted New York Life attorneys to obtain factual information. This factual information was derived completely from outside sources and does not reflect the employees' communications with the attorneys in any way. Disclosing this information will betray no confidential communications from the employees. Therefore, the Court finds that the requested communications

from the attorneys to the employees are not subject to the attorney-client privilege.

### 2. Communications from New York Life Employees to New York Life Attorneys.

■ When the client is a corporation, an additional question is which employees of the corporation are entitled to the protection of the privilege. The Illinois Supreme Court has adopted the "control group" test to decide this question. In *Consolidation Coal Co., v. Bucyrus–Erie Co.*, 89 Ill.2d 103, 119, 59 Ill.Dec. 666, 673, 432 N.E.2d 250, 257 (1982), the court stated that in a large corporation, an overly-broad attorney-client privilege has the potential "to insulate so much material from the truth-seeking process ... that the privilege ought to be limited for the corporate client to the extent reasonably necessary to achieve its purpose." Under the "control group" test, the corporate client must show that the communication originated from an employee in a position to control the decision-making process of the corporation. *Greer Properties, Inc. v. LaSalle Natl. Bank*, 1990 WL 70424 at *1, 1990 U.S.Dist. LEXIS 5466, No. 87 C 10983 at *3 (May 3, 1990). There are two categories of corporate employees whose communications are protected: (1) the decision-makers, or top management; and (2) those employees who directly advise top management, and upon whose opinions and advice the decision-makers rely. *Consolidation Coal*, 432 N.E.2d at 257–58.

■ Because the party who claims the privilege has the burden of showing facts which give rise to the privilege, *id.*, the question becomes: Has New York Life maintained its burden of showing that Kane, Gammill, Paul, Frazier, and Galler are members of its "control group"? Although Dawson specifically asserted the "control group" limitation in its motion to compel, see Plaintiff's Memorandum of Law [Corrected] in Support of his Motion to Compel Discovery at 27, New York Life has failed to produce any evidence of these employees' roles in New York Life's decision-making process. New York Life refers to Kane, Gammill, and Paul as "senior officers" of the company. The Court also learns from the affidavit of

Edwin G. Schallert, see Appendix to Defendants' Opposition to Plaintiff's Motion to Compel Discovery at 1, that Kane is General Counsel, Gammill is Executive Vice–President, and Paul is Senior Vice–President. From this, we believe it is plausible to infer that these individuals fall under either category of the *Consolidation Coal* standard. Therefore we hold that Kane, Gammill, and Paul were members of New York Life's "control group" at the time the alleged defamatory statements were made.

■ Although these employees have been found to be a part of its "control group," New York Life still cannot show that any of the employees' communications were made to attorneys acting in their legal capacity for the purpose of securing legal advice. The information communicated by the attorneys was surely of a legal nature. This information concerned the Hernandez proceedings and the fraud claims of Richard and Veronica Cruz. However, common sense tells us that there is a difference between merely providing legal information and providing legal "advice." Here, the attorneys were simply called upon to provide factual information to the New York Life employees at issue. The attorneys' purpose was not to instruct the employees on the proper use of this information. This case would be different if the speakers (and Frazier) consulted with the attorneys concerning the legal consequences of what they might say in their speeches or if Galler sought advice on the legal consequences of what was included in the Amended Form U–5. However, as this is not the case, the Court agrees with Dawson that the attorneys were acting more as "courier[s] of factual information," rather than "legal advisers." Therefore, the communications of the employees to the attorneys are not subject to the attorney-client privilege.

### II. Work–Product Privilege

■ New York Life has also refused to produce the requested materials by asserting the work-product doctrine. Unlike the attorney-client privilege, the work-product doctrine is governed by a uniform federal standard even in diversity cases. *Greer Properties, Inc. v. LaSalle Natl. Bank*, 1990 WL

70424 at *2, 1990 U.S.Dist. LEXIS 5466, No. 87 C 10983 at *6 (May 3, 1990).

■ The work-product doctrine is "distinct from and broader than the attorney-client privilege." *United States v. Nobles,* 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 2170 n. 11, 45 L.Ed.2d 141 (1974). It developed to protect the work of an attorney from encroachment by opposing counsel. *Binks Manufacturing Co. v. National Presto Indus.,* 709 F.2d 1109, 1118 (7th Cir.1983). It consists of a multi-level protection whereby that information most closely related to an attorney's litigation strategy is absolutely immune from discovery, while that information with a more tenuous relationship to litigation strategy might be available in circumstances evincing a substantial need or undue hardship on the part of the discovery proponent. *International Surplus Lines Ins. Co. v. Willis Corroon Corp.,* 1992 WL 345051 at *4, 1992 U.S.Dist. LEXIS 17332, No. 91 C 6057 at *11–12 (November 10, 1992).[3]

■ The threshold determination in a case involving a claim of work-product privilege is whether the material sought to be protected was prepared "in anticipation of litigation." *Binks,* 709 F.2d at 1118. It has been summarized that in order to establish work-product protection for a document, the discovery opponent must show that "the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation." *Id.* at 1119 (quoting *Janicker v. George Washington University,* 94 F.R.D. 648, 650 (D.D.C. 1982)). The documents must have been prepared because of the prospect of litigation. *Id.* at 1120 (citing 8 Wright & Miller, Federal Practice & Procedure: Civil § 2024). The work-product doctrine does not extend to every communication by an attorney that may concern litigation in some way. The communication must be made as part of the adversary process. *Greer Properties, Inc. v. LaSalle Natl. Bank,* 1990 WL 70424 at *2–3, 1990 U.S.Dist. LEXIS 5466, No. 87 C 10983 at *7 (May 3, 1990).

■ Incredibly, in its brief in opposition to Dawson's motion to compel discovery, New York Life does not affirmatively assert that the materials requested by Dawson were made in anticipation of litigation. Perhaps the reason for the omission is that there is simply no litigation to attach to these materials. The purpose of the communications from the attorneys to Kane, Gammill, Paul, and Frazier was to inform them of what had already occurred in the Hernandez case. Similarly, the information transmitted to Galler was to be used as an aid in completing the Amended Form U–5. There is no evidence that the motivating purpose behind the preparation of the documents was to aid in possible future litigation. The case would be different if it were shown that the documents were prepared to aid in possible future litigation of Dawson (or anybody else for that matter). However, because New York Life has not proven this to be the case, the Court holds that the work-product doctrine does not apply to the requested materials.

In its brief in opposition to Dawson's motion to compel, New York Life argues that the materials were properly prepared in connection with the Hernandez litigation. See Defendants' Opposition to Plaintiff's Motion to Compel Discovery at 16. New York Life states that "[a]lthough the Hernandez litigation was settled in May 1993, the materials prepared in connection with that litigation are protected ..." Def.'s Opposition at 16 n. 8. The Court finds two flaws with this argument. First, it cannot be said that the materials were prepared *for* the Hernandez litigation. Although the materials in question had

---

**3.** Federal Rule of Civil Procedure 26(b)(3) provides:

a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the

party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

the Hernandez litigation as its subject matter, it is obvious that these materials were not meant to aid in the adversarial process. The materials were simply meant to provide factual information to New York Life employees about the Hernandez litigation. Second, the cases cited by New York Life in support of its position envisioned factual circumstances that are dissimilar to the present situation. The cited cases visualized a factual situation where there is a past litigation and a present litigation and the information at issue was prepared for the past litigation. *See Federal Trade Commission v. Grolier, Inc.*, 462 U.S. 19, 25, 103 S.Ct. 2209, 2213, 76 L.Ed.2d 387 (1983) ("The literal language of [Rule 26(b)(3) ] protects materials prepared for any litigation or trial as long as they were prepared *by or for a party to the subsequent litigation*.") (Emphasis added); *Clark v. City of Munster*, 115 F.R.D. at 614 ("The work product privilege may be claimed in a *related proceeding* even if the litigation for which the file was created has been terminated.") (Emphasis added). The present case simply does not fit into the factual situation outlined above. While the Hernandez case could be viewed as the "past litigation," the Court has already held that there was no pending litigation nor identifiable prospect for future litigation at the time the disputed documents were prepared. Therefore, the Court cannot accept New York Life's overly broad argument and holds that the materials requested by Dawson do not fall under the work-product doctrine.

### III. *Implied Waiver*

Although the Court has already held that the attorney-client and work-product privileges do not apply to the materials requested by Dawson, we will briefly analyze the implied waiver argument proffered by Dawson.

Dawson argues that in order to prove that the qualified privileges asserted by New York Life were abused, it has the burden of showing that New York Life had "a direct intention to injure another, or ... a reckless disregard of the defamed party's rights and the consequences that may result to him ..." See Dawson's Memorandum of Law [Corrected] in Support of his Motion to Compel Discovery at 20 (citing *Kuwik v. Starmark Star Marketing & Admin., Inc.*, 156 Ill.2d 16, 30, 188 Ill.Dec. 765, 771–72, 619 N.E.2d 129, 135–36 (1993)). Dawson argues that in order to meet its burden, he must be allowed to learn about what the New York Life attorneys told its employees about the Hernandez trial.

 To waive the attorney-client privilege by "voluntarily injecting" an issue into a case, a defendant must do more than merely deny a plaintiff's allegations. The holder must inject a new factual or legal issue into the case. Most often, this occurs through the use of an affirmative defense. *See Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir.1987) (noting that while the assertion of an affirmative defense might be found to be an implied waiver, a defendant's mere denial of a plaintiff's claim will not amount to a waiver). New York Life argues that it has merely denied wrongdoing through its assertion of qualified privileges. It then cites *In re International Harvester's Disposition*, 666 F.Supp. 1148, 1151 (N.D.Ill. 1987), for the proposition that a mere denial of wrongdoing does not amount to an implied waiver. This argument cannot be accepted. The assertion of a qualified privilege is not simply a denial of a plaintiff's claim. Qualified privilege is an affirmative defense to a defamation claim. *Babb v. Minder*, 806 F.2d 749, 753 (7th Cir.1986). Furthermore, it is the nature of an affirmative defense to raise a "matter outside the scope of the plaintiff's prima facie case." *Lorenz*, 815 F.2d at 1098 (citing 2A J. MOORE, Moore's Federal Practice ¶ 8.19[1] (2d ed. 1984)). Therefore, the Court finds that New York Life has "voluntarily injected" the issue of qualified privilege into this case.

Ultimately, the Court is influenced by the two cases relied upon by Dawson in support of its position: *Southwire Co. v. Essex Group, Inc.*, 570 F.Supp. 643 (N.D.Ill.1983) and *McLaughlin v. Lunde Truck Sales, Inc.*, 714 F.Supp. 916 (N.D.Ill.1989). In *Southwire*, the defendant (Essex) asserted estoppel as a defense to a patent infringement suit. Essex argued that it took detrimental action in reliance on the plaintiff's inaction in enforcing its patent, and that as a result of

the plaintiff's previous failure to enforce, the plaintiff was estopped from bringing suit. The plaintiff sought discovery of Essex's communications with its attorney to show that Essex in fact relied on the advice of counsel instead of plaintiff's inaction. In *McLaughlin,* the Department of Labor ("DOL") sued Lunde for willful violation of the Fair Labor Standards Act ("FLSA"). Lunde asserted the affirmative defense of good faith reliance on DOL opinions and representations. DOL sought discovery of communications between Lunde and his attorney to show that he in fact relied on the advice of his counsel rather than any DOL representations. In both cases, the requested materials were held to be discoverable on the basis of implied waiver. As Dawson pointed out in his motion to compel, "the substantive law entitled plaintiff to discovery of defendants' knowledge to refute defendants' assertion of "good faith" defenses; there was record evidence that defendants relied on attorney communications in furtherance of their underlying activity; and permitting the defendant to hide behind the privilege under such circumstances was grossly unfair." See Dawson's Memorandum of Law in Support of his Motion to Compel Discovery at 24. The fact that these circumstances are present in the case at bar persuades us to follow *Southwire* and *McLaughlin* and hold that New York Life has waived its privileges by asserting the qualified privilege defenses.[4]

New York Life argues that the present case is distinguishable from *Southwire* and *McLaughlin* because it has not made any representations about the advice of counsel to establish its affirmative defenses. The Court disagrees with this argument. All of the employees at issue in this matter state in their depositions that they in fact did rely on the factual information contained in the attorney communications that Dawson seeks to

compel here. Accordingly, the Court holds that New York Life has waived its attorney-client and work-product privileges with respect to the materials requested by Dawson.

### CONCLUSION

Based on the foregoing reasons, the motion of plaintiff Ronald D. Dawson is granted with respect to the materials requested in Dawson's Memorandum of Law [Corrected] in Support of his Motion to Compel Discovery.[5]

---

4. Although the *Southwire* and *McLaughlin* decisions found an implied waiver of the attorney-client privilege, we believe that the same considerations that require the holding that New York Life has waived the attorney-client privilege as to the materials at issue also dictate that there has been a waiver of the work-product privilege. *See Southwire,* 570 F.Supp. at 650.

5. New York Life also argues that Dawson's motion to compel discovery was untimely. We agree with Dawson that this argument merits little discussion and reject the argument for the reasons set forth in Plaintiff's Reply Memorandum in Support of his Motion to Compel Discovery, P. 15 n. 5.