KATHY A. FASCIAN *et al.*, Plaintiffs-Appellants, *v.* HENRY RICHARD BRATZ *et al.*, Defendants-Appellees.

Third District   No. 80-398

Opinion filed May 21, 1981.

William T. Makovic, of East Peoria, for appellants.

Donald G. Beste and Jerry T. Stafford, both of Peoria, for appellees.

Mr. JUSTICE HEIPLE delivered the opinion of the court:

This case arises out of investigation of the theft of four money orders from a Kroger store. Kroger management suspected a Kroger employee, Kathy Fascian, and her boyfriend, Robert Modglin, a State policeman, of the theft. No charges being filed, Kathy Fascian and Robert Modglin, plaintiffs, brought a slander action against the corporate defendant, Kroger Company, and its employees, Henry Bratz, Robert Eichler, and Carole Vogelsang (Ms. Vogelsang is not a party to this appeal). In a bench trial at the close of plaintiffs' case, the trial judge granted the defendants' motion for judgment (Ill. Rev. Stat. 1979, ch. 110, par. 64(3)). After an unsuccessful attempt to vacate that order and obtain a new trial, the plaintiffs appeal. We affirm.

On June 10, 1975, Carole Vogelsang went to work at the Madison Park Kroger store in Peoria. Balancing the previous day's receipts, she found a $561 shortage. After accounting for $11, she informed Mr. Wooden, the store manager. He contacted Henry Bratz, a Kroger security employee. Robert Eichler, a risk manager, was called in from Indianapolis, Indiana. An investigation was undertaken.

Bratz determined the source of the deficit was stolen money orders. Money orders were issued only by office personnel. To issue one, the employee put the preprinted form in a machine which recorded the amount, Kroger name, and store number, while imprinting a serial number on a tape. The tape was sent to the company who printed the forms; Kroger retained a carbon of the transaction. To negotiate a money order, the purchaser only had to write his name and address and the payee's name on the money order. When comparing the serial numbers from the tape and the individual cash amounts for money orders issued from the store on June 9, 1975, Bratz found: four money orders in sequential order totaling $550; the amounts of each of the four were unusually high; three of the four stolen money orders were negotiated in other Kroger stores by a man of similar description; the purchasers' names and addresses on those money orders could not be verified. Bratz concluded the four money orders were issued by an office employee who did not receive payment for them.

The Kroger investigation focused on Kathy Fascian. On June 9 she was working at the time of the theft. So were at least two other office workers. Earlier that day, Ms. Fascian prepared a money order for her boyfriend, Robert Modglin, but later voided it since he bought one elsewhere before arriving at the store. Admittedly, she was familiar with issuing these money orders as was Modglin, who frequently purchased them. Modglin, a State policeman, fit the description of the person who negotiated the three stolen money orders.

In their investigation, Eichler and Bratz had several interviews with Kathy Fascian on Kroger premises. On July 1, 1975, with only Bratz present, Eichler said:

> "Your [Kathy Fascian's] boyfriend, Modglin, came back later after the four money orders, didn't he? You stole the money orders and Modglin cashed them in, isn't that the way it happened? You took the money orders * * *."

Similar accusations were made in other meetings. Steadfastly, Ms. Fascian maintained innocence.

On July 10, 1975, Eichler and Bratz met with Illinois State Police in their Springfield offices. Eichler felt that Modglin's employer should investigate the matter. The Illinois State Police agreed. First, the charge

was undertaken as a personnel inquiry. Later, a full theft investigation was initiated. Modglin was cleared of any wrongdoing.

Both plaintiffs claim the investigation undermined their honesty and credibility. They still work for their respective employers and neither were suspended or lost wages.

Appellants present three issues for review: (1) whether the alleged defamatory statements were privileged; (2) whether such privilege was abused; (3) whether the trial court erred in granting defendants' motion for judgment at the close of plaintiffs' evidence.

Both plaintiffs admit all challenged statements were made only in the presence of Kroger management employees or police officers investigating the theft. They contend these statements are slanderous *per se* since they accused them of the commission of a crime and that these statements were not privileged. They contend further that any conditional privilege defendants possessed was abused.

■■ A communication is conditionally privileged where a defendant, who has a duty or interest to uphold, makes a remark, in good faith on a proper occasion in an appropriate way to proper parties, that is limited to the duty or interest he seeks to affirm. (*Judge v. Rockford Memorial Hospital* (1958), 17 Ill. App. 2d 365, 377.) Kroger had an undeniable interest in determining the source of the theft and who did it. All inquiries with respect thereto were conducted by Kroger's management employees behind closed doors. The scope of their investigation was confined to the incident. A former police officer himself, Eichler acted soundly in seeking the assistance of the Illinois State Police. As a citizen he enjoyed a privilege to inform the police of crimes he thought were committed. As the trial judge noted, if Eichler had gone to the local police they would have immediately contacted the Illinois State Police once Modglin's occupation was revealed. The chance of unnecessary republication was thus avoided. Also, the State Police enjoy complete statutory authority to conduct a theft investigation. (Ill. Rev. Stat. 1979, ch. 121, par. 307.16.) Merely because Kroger personnel persisted investigating privately for a two-month period, while the State Police conducted its probe, does not vitiate the conditional privilege. Kroger had a qualified right to make appropriate internal checks concerning the job conduct of its employees.

■■ A conditional privilege is lost when defendants abuse the immunity the law affords them. To show this, a plaintiff must prove the defendant acted with actual malice. Eichler and Bratz not only had support for plaintiffs' involvement, but their hypothesis was reasonable. Their investigatory conduct was not excessive. Strong-arm tactics were not used, nor publication of the incident broadcast to uninterested third parties to coerce admissions of guilt. Since plaintiffs failed to establish that either

individual acted in bad faith or with improper motives, no malice existed on defendants' part. (*Myers v. Sponholtz* (1973), 11 Ill. App. 3d 560, 569.) The trial court quite properly found no abuse of defendants' conditional privilege to investigate an obvious, internal theft loss.

■■ The existence of a qualified privilege is an affirmative defense to a slanderous remark. This is so even though the utterances turn out to be false. Since a qualified privilege undeniably existed here, the plaintiffs, as part of their *prima facie* case, had to prove the defendants acted with malice in the course of the investigation. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151.) This they did not do. And, the trial court so found after hearing the witnesses testify and then weighing the evidence. This was proper and not against the manifest weight of the evidence. The existence of the privilege, which was not abused, precluded recovery based on the evidence plaintiffs' case produced.

For the reasons stated, the judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

SCOTT, P. J., and BARRY, J., concur.