James A. **HOOD**, Plaintiff–Appellant,

v.

**CITY OF CHICAGO,**
**Defendant–Appellee.**

No. 88–2038.

United States Court of Appeals,
Seventh Circuit.

Argued March 6, 1990.

Decided March 11, 1991.

Harvey Melinger, Chicago, Ill., for plaintiff-appellant.

Judson H. Miner, Ruth M. Moscovitch, Asst. Corp. Counsel, Appeals Div., William B. Mackin, Diane Larsen, Joseph A. Moore, Corp. Counsel, Chicago, Ill., for defendant-appellee.

Before WOOD, Jr. and KANNE, Circuit Judges, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

James Hood appeals the dismissal of his 42 U.S.C. § 1983 action against the City of Chicago in which he alleged that he was detained excessively in police custody following his arrest on misdemeanor charges.

At approximately 11:00 a.m. on January 17, 1986, Chicago police officers arrested Hood while he was driving an automobile on a Chicago street. The police arrested him and charged him with four misdemeanors: (1) possession of marijuana (Ill.Rev. Stat. ch. 56½, para. 704(a)); (2) unlawful possession of a firearm (Ill.Rev.Stat. ch. 38, para. 83–2); (3) unlawful use of a firearm (Ill.Rev.Stat. ch. 38, para. 24–1(a)(10)); and (4) failure to register a firearm (Chicago, Ill., Municipal Code § 11.1–2(a)). The record casts no light on the circumstances of his arrest, or what probable cause precipitated it. All that is clear is that unlike three of the misdemeanors, the fourth, unlawful use of a firearm, may be upgraded to a felony if the person arrested has been convicted of a felony within a specified time period. If this one misdemeanor had not been involved, Illinois law would have been applicable providing that the arrestee should be released on the posting of a one hundred dollar bond rather than being required to appear before a magistrate for a probable cause hearing.

Because of the unlawful gun use arrest pending, it was necessary to ascertain whether he had been previously convicted of a felony. Accordingly, after he was taken to a police station for processing, he was fingerprinted at approximately 1:00 p.m. and thereafter kept in detention.

Hood's complaint alleges that he offered to post his bail at the time he was arrested "and at all times thereafter, but his bail tender was refused until his fingerprints cleared." The complaint does not allege when this examination was completed, the complaint only alleging that he was not allowed to post bail bond until five minutes after midnight, which was approximately eleven hours after he was fingerprinted.

For the present purposes we assume that the examination was not completed until shortly before release, although the allegations are not inconsistent with an earlier completion and an inadvertent failure of communication of the results to the confining authorities. We have taken the first interpretation in view of subsequent allegations of the complaint regarding the time expended and result of delay and that "on information and on belief plaintiff believes that the time needed to clear fingerprints should not exceed two hours if there are adequate fingerprint technicians on duty."

Finally, on the subject of delay, Hood's complaint alleged the following: "[t]hat the delay in clearing fingerprints of plaintiff

and the class mentioned hereafter resulted from a policy and practice and custom in the City of Chicago whereby there are inadequate fingerprint technicians on duty to perform the job of fingerprint clearance which results in a large backlog of fingerprints waiting for a technician to start to work on them."

As suggested in the last quoted part of the complaint, Hood proceeded to set forth two classes for a class action. He sought damages for one class and an injunction for the other. Before granting class certification, however, the district court dismissed Hood's complaint and this appeal followed.

It is appropriate at this point to observe that we regard the complaint as being conclusory in many of its allegations. We note that Hood apparently made no effort after the motion to dismiss was filed to secure discovery to buttress and to make more specific his generalized allegations regarding the city's procedures in fingerprinting. He also failed to file an amended more specific complaint after the original had been dismissed.

Hood argues, *inter alia*, on appeal that the district court erred in dismissing his complaint for failure to state a claim for relief under the Fourteenth Amendment's due process clause. In analyzing the Fourteenth Amendment claim, the district court agreed that procedural due process was implicated in excessive detention claims, but held that the availability of adequate state tort remedies fulfills procedural due process requirements. The court held that, under Illinois law, Hood had a potential false imprisonment and/or a false arrest claim and therefore dismissed his § 1983 claim.

■ In *Guenther v. Holmgreen*, 738 F.2d 879, 882 (7th Cir.1984), *cert. denied*, 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985), we applied the Supreme Court's decision in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and held that "a victim of a property or liberty deprivation who has recourse to an adequate state remedy has not been denied 'due process of law.'" *Guenther* appears therefore to foreclose Hood's Fourteenth Amendment claim since he alleges that he was deprived of liberty without due process of law, yet Illinois provides adequate state tort law remedies such as false imprisonment or false arrest.

Hood argues that *Parratt* applies solely to negligent deprivations of life, liberty, or property and therefore is inapposite to his case. In *Guenther*, however, the plaintiff alleged that he was falsely arrested and detained in violation of his Fourteenth Amendment right to due process. *Guenther*, 738 F.2d at 881. We held that the existence of false arrest and imprisonment actions (*intentional* torts) provided adequate state law remedies. Thus, *Parratt*'s reach is not limited to negligent deprivations, but covers both negligent and intentional deprivations where the claim advanced is a denial of due process. As we stated in *Guenther*, however, "*Parratt* is inapplicable where the plaintiff asserts a violation of substantive constitutional guarantees—e.g., Fourth Amendment protections—as distinguished from a violation of his procedural due process rights." *Id.* at 882.

The district court held that Hood alleged no facts in his complaint that could support a claim for substantive, rather than procedural, due process. We agree. Accordingly, we hold that the district court correctly ruled in the Fourteenth Amendment claim.

■ Hood, however, also claims a denial of due process under the Fourth Amendment. Here also we are treating only a claim for denial of procedural due process. The cases involving extensive detention of persons charged only with non-upgradable misdemeanors do not help us here. As the district court pointed out, the following policy factors apply:

[t]he justification for holding pending fingerprint clearance misdemeanor arrestees such as Hood who are arrested for one of the limited number of misdemeanor offenses which are considered serious enough to be potentially raised to felonies based upon prior convictions is far greater than for misdemeanor arrestees whose offenses may not be raised to

felonies. The risk of flight or of danger to the public is much more substantial with a person charged with a felony than one charged with a misdemeanor. Also, until fingerprints clear for the arrestees whose offenses may be raised to felonies based upon prior convictions, the clearance of fingerprints is an administrative step incident to arrest.

While we agree generally with this statement, something else must be added and that the district court did when it added, "[t]he City must however process the arrestees 'without unnecessary delay.' Ill. Rev.Stat., ch. 38 § 109–1." It remained therefore for the district court, and now for us, to see if the complaint adequately alleges that the delay was sufficiently unnecessary to withstand a motion to dismiss.

Hood argues that even if fingerprint clearance is an administrative step incident to arrest, the city may not detain upgradable arrestees indefinitely to accomplish this step. We agree with both of these premises. The detention without unnecessary delay until fingerprint clearance is a necessary administrative step to determine whether one who has been arrested for an upgradable misdemeanor has previously been convicted of a felony. In Hood's case he only had one out of the four arrests which were in that category, and if it had not been for that one he could have promptly posted his $100 bond and gone about his business. The one misdemeanor, however, for the practical policy reasons stated by the district court required a reasonably necessary delay. No one contends that the city may detain indefinitely and that situation simply does not exist here.

More to the point perhaps is the allegation in the complaint on information and belief that the time needed to clear fingerprints should not exceed two hours if there are adequate fingerprint technicians on duty. We rather doubt that a competent fingerprint technician would take that long. Irrespective of whether it is more or less than two hours, Hood's contention could require the city to have standing by for duty a large number of technicians to meet this city's vacillatory flow of arrestees which at times might involve none with upgradable misdemeanors and at other times many in that category.

Hood attempts to avoid this unpredictability by simply concluding that in his case the clearance time was "excessive, unreasonable, and unnecessary." He does not suggest that the city has a crystal ball to indicate to the authorities what percentage of incoming arrestees at a given hour of the day or night might be simple misdemeanor arrestees, might be upgradable ones, or might be felon arrestees, requiring still a different procedure. The magnitude of the situation was the subject of a recent newspaper article stating that every Friday, Cook County Jail, the largest jail complex in the nation, ships 225 to 250 inmates to the state prison system. Chicago Tribune, Jan. 27, 1991. These are only the ones who have gone through the process to conviction. It does include inmates from Cook County suburbs, but there is little doubt that Chicago is a substantial contributor.

Finally, Hood relies, as stated above, on his allegation that the delay in clearing fingerprints of plaintiff and the class mentioned "resulted from a policy and practice and custom in the City of Chicago...."

We do not suggest that a complaint should plead evidence, but it should do more than plead in conclusory fashion that there was a "policy and practice." We decline to believe that the city has deliberately adopted a policy to increase the already crowded conditions by keeping arrestees detained longer than necessary. We regard this unsupported generalized allegation to mean no more than that there were insufficient technicians at the time he was brought to the station. He was arrested at eleven o'clock in the morning, which would not seem to be a notorious period of high crime. We can only conclude on the basis of the complaint that there was a sufficient number of persons in his category ahead of him occupying the attention of the technicians. Hood was not kept overnight, and although it was not until late in the evening, it is clear that the technicians stayed at their jobs until his case was reached. We decline at this time to impose on the

city a requirement to hire technicians to the extent of keeping them on a standby basis for surges of arrests at unpredictable times.

Accordingly, the judgment of the district court is

AFFIRMED.