Robert M. WEBER, and John
W. Weber, Plaintiffs,

v.

VILLAGE OF HANOVER PARK, a Municipal Corporation, Commander Gary Altergot, individually, Thomas P. Chesters, individually, Other Unknown Officers, and Other Unknown Police Chiefs, Defendants.

No. 90 C 2195.

United States District Court,
N.D. Illinois, E.D.

June 12, 1991.

Robert Steven Wilson, John P. Cooney, Sycamore, Ill., for Robert M. Weber and John W. Weber.

William W. Kurnik, Kurnik, Cipolla, Stephenson and Barasha, Ltd., Arlington Heights, Ill., for Village of Hanover Park, Commander Gary Altergot and Thomas P. Chesters.

## MEMORANDUM OPINION AND ORDER

ILANA DIAMOND ROVNER, District Judge.

### I. INTRODUCTION

Plaintiffs Robert M. Weber ("Robert") and John W. Weber ("John") bring this action against defendants Village of Hanover Park (the "Village"), Commander Gary Altergot ("Altergot"), Thomas P. Chesters ("Chesters"), and other unknown officers and police chiefs pursuant to 42 U.S.C. § 1983 and the common law of Illinois. Plaintiffs' fifteen-count complaint alleges a variety of claims against various of the defendants, all relating to an incident involving plaintiffs and defendant Chesters, a police officer for the Village. The majority of plaintiffs' claims are brought against Chesters pursuant to 42 U.S.C. § 1983. Plaintiffs, however, also allege Section 1983 claims against the Village and Alter-

got for their alleged failure to properly train Chesters and the other unknown police officers purportedly involved in the incident. The Village, Altergot and Chesters have moved to dismiss certain counts of plaintiffs' complaint. For the reasons stated below, the motion of the Village to dismiss Counts VIII and XIV of plaintiffs' complaint will be granted, and those counts will be dismissed without prejudice. Altergot's motion to dismiss Counts IX and XV is granted, and those counts will be dismissed with prejudice. However, defendant Chester's motion to dismiss Counts III, IV, and VI will be denied.

### II. FACTS

In considering the current motions to dismiss, the Court accepts as true the factual allegations of plaintiffs' complaint.[1] On April 20, 1989, on or about 4:45 p.m., Robert was operating his 1100 Yamaha motorcycle on Maple Street in Hanover Park, Illinois. John was a passenger on Robert's motorcycle. Robert was operating the motorcycle in accordance with the laws and/or ordinances of the Village and the State of Illinois. Defendant Chesters, who was employed as a full-time police officer by the Village, stopped plaintiffs' motorcycle and proceeded to arrest Robert for disorderly conduct. Chesters had neither probable cause nor a valid reason to stop or to arrest Robert. While making the arrest, Chesters hit Robert in the groin with a flashlight, kicked him in the ankles, and repeatedly pushed, shoved, and threatened to beat him. As a result, Robert sustained severe and permanent damage to his groin, ankles, and wrists. Other unknown police officers purportedly were present during this incident and watched these events.

After he was arrested, Robert was handcuffed and imprisoned for a period of time at the Village police station. While there, Chesters searched Robert's pockets and personal belongings. In so doing, he found a Blockbuster Video ("Blockbuster") card

---

1. In considering a motion to dismiss, the Court must construe all allegations in the complaint as true and view those allegations in the light most favorable to plaintiff. *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 733 (7th Cir.1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). Hence, the Court describes the facts in accordance with the allegations in plaintiffs' complaint.

belonging to Sue Smock ("Smock"). Chesters asked Robert to whom the card belonged, and Robert responded that it belonged to a friend but that he was listed as an additional user of the card. Chesters then called Blockbuster and talked to Richard St. George ("St. George"). Chesters told St. George that Robert was in possession of a stolen card from the Blockbuster store. St. George responded that Robert was listed as an additional user of Smock's video card and that the account was in normal status. Robert alleges that by calling Blockbuster and accusing him of stealing the video card, Chesters acted with a deliberate intent to harm him and that Chester's conduct caused him personal humiliation and blemished his reputation within the community.

Criminal charges for disorderly conduct were brought against Robert. When the case was called for a hearing in the Criminal Court Division of the Circuit Court of Cook County on May 11, 1989, Robert moved to dismiss the charges against him. The prosecutor responded by pleading *nolle prosequi*, meaning that the State no longer would prosecute its case against Robert. Thus, the case subsequently was stricken from the court calendar. The criminal charges against Robert were never reinstated.

In conjunction with the arrest of Robert, John Weber also was detained and searched by defendant Chesters. Chesters kicked John in the ankles and repeatedly pushed, shoved, and threatened to beat him. As a result, John also sustained severe and permanent damage to his ankles and legs. During the incident, John was not free to leave, and he effectively was under arrest. Chesters had neither probable cause nor a valid reason to stop or detain John.

Counts I through IX of plaintiffs' complaint are brought by Robert. Counts I through IV are brought against Chesters pursuant to 42 U.S.C. § 1983 for, respectively, false arrest, excessive force, false imprisonment, and malicious prosecution. In Count V, Robert alleges that defendant Chesters is liable under Illinois law for assault and battery. Count VI alleges that Chesters defamed Robert by making the above-described telephone call to the Blockbuster Video store. Count VII is brought against other unknown police officers pursuant to Section 1983, also alleging false arrest, excessive force, false imprisonment, and malicious prosecution. That count alleges that the other unknown police officers failed to intervene on plaintiffs' behalf to prevent the injuries inflicted by Chesters. In Count VIII, Robert alleges that the Village also is liable pursuant to Section 1983 for failing to properly train its police officers. Count IX makes similar charges against Altergot and other unknown police chiefs.

Counts X through XV are brought by John. Counts X and XI are brought against Chesters pursuant to Section 1983, alleging false arrest and excessive force. Count XII is a state law claim against Chesters for assault and battery. Count XIII mirrors John's other Section 1983 claims but is brought against other unknown police officers who purportedly failed to intervene. Counts XIV and XV allege Section 1983 claims against the Village, Altergot, and other unknown police chiefs. These claims against the municipality and certain supervisory authorities are identical to Robert's claims against those defendants.

Chesters has moved to dismiss Counts III, IV, and VI of plaintiffs' complaint for failure to state a claim. The Village and Altergot, moreover, have moved to dismiss all claims brought against them. The Court addresses each of the motions in turn.

## III. ANALYSIS

On a motion to dismiss, the Court must assume the truth of all well-pleaded facts in plaintiffs' complaint and view them in the light most favorable to plaintiffs. *See Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 733 (7th Cir. 1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). Dismissal is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). However, conclusory allegations that lack an underlying factual basis are insufficient to withstand a motion to dismiss. *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

## A. SECTION 1983 CLAIMS AGAINST CHESTERS.

### 1. Count III—False Imprisonment.

■ Defendant Chesters first moves to dismiss Count III, the false imprisonment claim brought pursuant to Section 1983.[2] Chesters contends that Count III fails to state a claim because "[n]o cause of action exists under 42 U.S.C. Section 1983 for false imprisonment, as distinguished from false arrest." (Chesters' Motion ¶ 4.) In support of this contention, Chesters cites *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), and contends that the Supreme Court held in that case that false imprisonment cannot rise to the level of a constitutional claim. (Defendants' Mem. at 2–3.) Plaintiffs respond that Chesters lacked probable cause for Robert's arrest and that the subsequent imprisonment of Robert based upon that improper arrest violated his constitutionally protected interests. They contend that such a false imprisonment claim is actionable pursuant to Section 1983, and they interpret *Baker* only to exclude those false imprisonment claims based upon a defendant's negligence, as opposed to the intentional deprivation of a constitutional right.

Although the Court cannot agree with either interpretation of *Baker*, it does agree that the Supreme Court's decision in that case does not stand for the broad proposition advanced by Chesters that false imprisonment may never rise to the level of a constitutional tort actionable under Sec-

tion 1983. In *Baker*, the Supreme Court considered the question of whether allegations of "simple negligence," actionable pursuant to state tort law, also state a claim under Section 1983. *Baker*, 443 U.S. at 139, 99 S.Ct. at 2692. The Court drew a distinction between "violations of rights protected by the Constitution" and "violations of duties of care arising out of tort law." *Id.* at 146, 99 S.Ct. at 2695. The Court held that only constitutional violations are actionable under Section 1983. *Id.* As the Court explained, the tort of "false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official." *Id.* at 146, 99 S.Ct. at 2696.

The facts of *Baker*, however, are easily distinguished from those alleged in the present complaint. In *Baker*, the plaintiff had been arrested and detained pursuant to a facially valid warrant. Although it eventually was determined that the plaintiff was innocent of the charge contained in the warrant, there was no suggestion in that case that the arrest itself was constitutionally deficient. *See id.* at 143, 99 S.Ct. at 2694. In those circumstances, the Supreme Court stated that "[r]espondent's innocence of the charge contained in the warrant, while relevant to a tort claim of false imprisonment in most if not all jurisdictions, is largely irrelevant to his claim of deprivation of liberty without due process of law." *Id.* at 145, 99 S.Ct. at 2695. As a result, the claim for false imprisonment simply did not rise to constitutional dimensions. *See Whitley v. Seibel*, 613 F.2d 682, 685–86 (7th Cir.1980). In the instant case, however, plaintiffs have alleged a constitutionally deficient detention and arrest. Robert alleges that Chesters stopped his vehicle without probable cause and proceeded to arrest him. (Complaint, Count I, ¶ 14.) As a result of this improper detention and arrest, Robert alleges that he was falsely impris-

---

**2.** 42 U.S.C. § 1983 provides in pertinent part that:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other per-

son within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

oned at the Village police station. (Complaint, Count III, ¶ 24.) This arrest and subsequent imprisonment is alleged to have violated his right to be free from unreasonable searches and seizures pursuant to the Fourth and Fourteenth Amendments. (Complaint, Count I, ¶ 15; Count III, ¶ 24.) Therefore, because Robert's arrest is alleged to be constitutionally deficient, this case is not controlled by *Baker.*

In *Guenther v. Holmgreen,* 738 F.2d 879 (7th Cir.1984), *cert. denied,* 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985), the Seventh Circuit considered a Section 1983 claim similar to that at issue herein. In that case, Guenther claimed that his arrest on misdemeanor charges of disorderly conduct and resisting arrest was made without probable cause and was based on factual misrepresentations of the arresting police officer. *Id.* at 881. As a result, the plaintiff contended that the arrest violated both his Fourth Amendment right to be secure from unreasonable searches and seizures and his Fourteenth Amendment right to due process. *Id.* The Seventh Circuit affirmed the grant of summary judgment on the Fourteenth Amendment due process claim because plaintiff had adequate state remedies for false arrest, false imprisonment, and malicious prosecution. Relying on the Supreme Court's decision in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Seventh Circuit held that "a victim of a property or liberty deprivation who has recourse to an adequate state remedy has not been denied 'due process of law.'" *Guenther,* 738 F.2d at 881; *see also Parratt v. Taylor,* 451 U.S. 527, 543–44, 101 S.Ct. 1908, 1916–17, 68 L.Ed.2d 420 (1981); *Hood v. City of Chicago,* 927 F.2d 312, 314 (7th Cir.1991) ("*Guenther* appears therefore to foreclose Hood's Fourteenth Amendment claim since he alleges that he was deprived of liberty without due process of law, yet Illinois provides adequate state tort law remedies such as

false imprisonment or false arrest."); *Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 199 (7th Cir.1985). With respect to the Fourth Amendment claim, however, the Court of Appeals in *Guenther* held that the Supreme Court's decision in *Parratt* "is inapplicable where the plaintiff asserts a violation of constitutional guarantees—e.g., Fourth Amendment protection—as distinguished from a violation of his procedural due process rights." *Guenther,* 738 F.2d at 882; *see also Hood,* 927 F.2d at 314; *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 871–72 (7th Cir.1983); *State Bank of St. Charles v. Camic,* 712 F.2d 1140, 1147 n. 5 (7th Cir.1983), *cert. denied,* 464 U.S. 995, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983). Distinguishing the Supreme Court's decision in *Baker,* the Court of Appeals wrote that

> unlike *Baker,* the plaintiff asserts that his arrest was made in bad faith and without probable cause, thereby depriving him of his right to be free from unreasonable seizures as guaranteed by the Fourth Amendment. Accepting these allegations as true, the plaintiff Guenther might have a cognizable § 1983 cause of action for injuries suffered as a result of the illegal, unconstitutional arrest.

*Guenther,* 738 F.2d at 883 (citing cases).[3]

*Guenther* and subsequent cases, therefore, would preclude Robert from alleging a Fourteenth Amendment claim for violation of his right to procedural due process. The existence in Illinois of adequate state tort law remedies for the intentional torts of false arrest and false imprisonment negates the existence of a due process violation. *See Hood,* 927 F.2d at 314; *see also Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). However, the violations alleged by Robert are not merely procedural; they are substantive. Robert contends that his constitutional right "to be free from unlawful search and

---

**3.** The Seventh Circuit ultimately affirmed the district court's grant of summary judgment on the Fourth Amendment claim, however. It held that because the issue of probable cause—the cornerstone of Guenther's Fourth Amendment claim—had been decided adversely to him in a preliminary hearing on state criminal charges,

he was collaterally estopped from asserting that his arrest was without probable cause in an action under Section 1983. *Id.* at 883–84. In the instant case, there is no indication that the state court ever made a determination regarding the existence of probable cause for Robert's arrest.

seizure under the [Fourth] and [Fourteenth] Amendments" was violated by his arrest. (Complaint, Count I, ¶ 15.) Moreover, as a direct and proximate result of that arrest, Robert was falsely imprisoned at the Village police station. (Complaint, Count III, ¶ 24.) Thus, the allegations in the present complaint fall squarely within the exception carved out in *Guenther* for arrests "made in bad faith and without probable cause" and depriving the plaintiff "of his right to be free from unreasonable seizures as guaranteed by the Fourth Amendment." 738 F.2d at 883; *see also Hood*, 927 F.2d at 314; *Govan v. Chicago Police Dept.*, 1991 WL 38695, *1–2, 1991 U.S.Dist. LEXIS 3152, *3–4 (N.D.Ill. Mar. 15, 1991) (Holderman, J.). A claim for false imprisonment pursuant to Section 1983 clearly lies on the basis of such allegations. *See Davis v. Butler*, 1990 WL 147088, *3, 1990 U.S.Dist. LEXIS 12859, *7 (N.D.Ill. Sept. 27, 1990) (Kocoras, J.). Of course, the touchstone of Robert's claim is the absence of probable cause for his arrest, for it is well established that "the existence of probable cause for an arrest totally precludes any section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution...." *Mark v. Furay*, 769 F.2d 1266, 1269 (7th Cir.1985) (collecting cases); *see also Currier v. Baldridge*, 914 F.2d 993, 996 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1588, 113 L.Ed.2d 652 (1991). Robert has alleged that no probable cause existed in the instant case.[4] Accepting that allegation as true as it must on a motion to dismiss, the Court concludes that Count III of plaintiffs' complaint states a false imprisonment claim under 42 U.S.C. § 1983.

### 2. Count IV—Malicious Prosecution.

■ Defendant Chesters also moves to dismiss Count IV, contending that the tort of malicious prosecution cannot rise to the level of a constitutional tort under Section 1983. (Chesters' Motion ¶ 6.) Chesters argues that "[u]nder the well-established law in this circuit and others, the tort of malicious prosecution is not a tort of constitutional dimension and is not actionable" under Section 1983. (Defendants' Mem. at 3.) Chesters is only half right. Ordinarily, allegations of abuse of legal process or malicious prosecution do not state a claim under 42 U.S.C. § 1983. However, the Seventh Circuit has held that such actions may be maintained "if, acting under color of state law, the defendant has subjected the plaintiff to a deprivation of constitutional magnitude." *Hampton v. Hanrahan*, 600 F.2d 600, 630 (7th Cir.1979), *rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980); *see also Easter House v. Felder*, 910 F.2d 1387, 1407 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991); *Cameo Convalescent Center, Inc. v. Senn*, 738 F.2d 836, 845 (7th Cir.1984), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 780, 83 L.Ed.2d 775 (1985). Robert contends that Chesters' conduct here, in subjecting him to an arrest and detention without probable cause, utilizing excessive force during the course of that arrest and detention, and causing him to be prosecuted on an unfounded charge, has subjected Robert to a deprivation of constitutional magnitude. (Plaintiffs' Mem. at 6.) The Court agrees that in the circumstances alleged in plaintiffs' complaint, a claim for malicious prosecution pursuant to 42 U.S.C. § 1983 has been stated.

In *Hampton*, the Seventh Circuit considered a Section 1983 claim for malicious prosecution based upon an arrest, detention, and prosecution purportedly lacking in probable cause. *Hampton*, 600 F.2d at 630. By concluding that this claim as against certain defendants must be submitted to the jury, the Court of Appeals implicitly recognized that a prosecution supported and assisted by the individual

---

4. Chesters suggests that Count III should be dismissed on the authority of *Baker* because, in this case, like that one, there is no suggestion that the arrest itself was constitutionally deficient. (Defendants' Mem. at 3.) This argument ignores the allegations in plaintiffs' complaint.

Robert alleges that his arrest was constitutionally deficient because it was made without probable cause. Thus, his subsequent detention pursuant to that allegedly unlawful arrest is actionable pursuant to Section 1983.

who effected the improper arrest and detention can subject a plaintiff to a deprivation of constitutional magnitude. *Id.; see also Easter House,* 910 F.2d at 1407 (quoting *Hampton* ).

Moreover, in *Pryor v. Cajda,* 662 F.Supp. 1114, 1118 (N.D.Ill.1987), Judge Aspen agreed that, in general, malicious prosecution claims do not rise to the level of constitutional torts. However, he held that plaintiffs' allegations were sufficient to survive a motion to dismiss because the claim for malicious prosecution implicated "the deprivation of constitutional rights." *Id.* Judge Aspen found that the allegations of malicious prosecution were "intertwined with elements of an arrest made without probable cause followed by use of excessive force and a fairly extensive detention." *Id.* In those circumstances, he concluded that rights of a constitutional magnitude had been implicated and that the deprivation of those rights was actionable pursuant to Section 1983. *See also Burton v. Drakulich,* 1991 WL 38701, *2, 1991 U.S.Dist.LEXIS 3336, *5 (N.D.Ill. Mar. 20, 1991) (Aspen, J.); *Thomas v. Drochner,* 1990 WL 77841, *4–5, 1990 U.S.Dist.LEXIS 6017, *12–15 (N.D.Ill. May 17, 1990) (Kocoras, J.); *Hussain v. Papastratokas,* 1989 WL 81831, *1 & n. 2, 1989 U.S.Dist.LEXIS 8115, *3–4 & n. 2 (N.D.Ill. July 11, 1989) (Parsons, S.J.).[5] The Court agrees with Judge Aspen's analysis.

In the present case, Robert has alleged an improper arrest without probable cause, the use of excessive force in the course of that arrest and detention, as well as an improper confinement and prosecution stemming from the arrest. Chesters has not challenged either the false arrest or excessive force claims in the current motion to dismiss. Like Judge Aspen in *Pryor,* this Court finds that Robert's malicious prosecution claim is sufficiently intertwined with the elements of his other claims that a cause of action may lie. Therefore, the Court holds that, considering the allegations of the complaint as a whole, Robert has alleged a deprivation of constitutional magnitude sufficient to state a claim for malicious prosecution under Section 1983. *See Hampton,* 600 F.2d at 630.

**B. COUNT VI—DEFAMATION.**

Chesters also has moved to dismiss Count VI, which purports to state a claim under Illinois law for defamation per se. The defamation claim is based upon the statement made by Chesters to St. George regarding the purportedly "stolen" Blockbuster Video card in Robert's possession at the time of his arrest. In moving to dismiss the defamation claim, Chesters first contends that his statement, when afforded a reasonable construction, is not defamatory. (Motion ¶ 8.) He contends that the statement is capable of an innocent construction and that "[s]imply stating that someone is in possession of a stolen item neither accuses that person of theft nor of the offense of possession of stolen property." (*See* Chesters' Mem. at 7.) Alterna-

---

5. *Cf. Nanasi v. Fritz,* 1990 WL 51656, *1–3, 1990 U.S.Dist.LEXIS 4305, *3–7 (N.D.Ill. Apr. 13, 1990) (Plunkett, J.). In *Nanasi,* Judge Plunkett disagreed with Judge Aspen's decision in *Pryor,* finding it "insufficient to allege a 'deprivation of constitutional rights' in order to maintain" an action for malicious prosecution under Section 1983. *Id.* 1990 WL 51656, at *3, 1990 U.S.Dist.LEXIS 4305, at *6–7. Instead, Judge Plunkett found that "the allegation must be that the plaintiff has been 'subjected . . . to a deprivation of constitutional magnitude.' " *Id.* (quoting *Easter House v. Felder,* 879 F.2d 1458, 1477 (7th Cir.1989), *vacated,* — U.S. —, 110 S.Ct. 1314, 108 L.Ed.2d 490 (1990), *modified, reaff'd, en banc,* 910 F.2d 1387 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 783 (1991)). Although Judge Plunkett recognized that "the distinction between the words 'rights' and 'magni-

tude' might seem slight," he found that the term "magnitude," as used by the Seventh Circuit in *Easter House,* "refers to a deprivation that must be found significant, as opposed to merely existent." *Id.* This Court agrees that in constitutional terms, the distinction is a slight one indeed. However, even if Judge Plunkett's interpretation of the "constitutional magnitude" test is correct, the Court finds that this is an extremely thin thread upon which to base a dismissal on the pleadings. When a plaintiff alleges that his "constitutional rights" have been violated in the chain of events which include an alleged malicious prosecution, this Court cannot say that that plaintiff could prove no set of facts in support of his claim which may entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

tively, Chesters contends that he is entitled to a qualified privilege for his statement and that Robert has failed to allege the malicious conduct that is necessary to overcome that privilege. (Motion ¶ 8.)

A statement involving the imputation of a criminal offense is actionable as defamation *per se. See Ely v. National Super Markets, Inc.*, 149 Ill.App.3d 752, 102 Ill.Dec. 498, 505, 500 N.E.2d 120, 127 (4th Dist.1986); *see also Babb v. Minder*, 806 F.2d 749, 757 (7th Cir.1986). In the case of statements actionable *per se*, a plaintiff is not required either to plead or to prove malice or special damages. *Ely*, 102 Ill.Dec. at 505, 500 N.E.2d at 127. To constitute defamation *per se* under Illinois law, the crime imputed to the plaintiff "must be an indictable one, involving moral turpitude and punishable by death or by imprisonment otherwise than in lieu of a fine." *Id.* Chesters does not suggest that possession of a stolen video card fails to satisfy any of these elements. Instead, he contends only that the statement does not impute the commission of a crime because Chesters did not accuse Robert of stealing the card or of possessing stolen property. The Court cannot agree with this interpretation of the alleged statement.

The Illinois Supreme Court has held that in defamation cases, "a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning." *Chapski v. Copley Press*, 92 Ill.2d 344, 65 Ill.Dec. 884, 888, 442 N.E.2d 195, 199 (1982). The allegedly defamatory statement is not to be considered in isolation; instead, " '[t]he surrounding circumstances and the events that led to the utterance should be examined very closely and the words judged accordingly.' " *Babb,* 806 F.2d at 757 (quoting *Cantrell v. American Broadcasting Cos.*, 529 F.Supp. 746, 752 (N.D.Ill.1981)). Moreover, to constitute defamation *per se*, a statement which imputes the commission of a crime " 'need not state the commission of a crime in terms of art or with the particularity of an indictment.' " *Babb*, 806 F.2d at 758 (quoting

*Zeinfeld v. Hayes Freight Lines, Inc.*, 41 Ill.2d 345, 243 N.E.2d 217, 220 (1968)). Interpreting Chesters' statement in light of these principles, the Court concludes that a crime was in fact imputed to Robert and that, therefore, the statement is actionable as defamation *per se.* The Court further concludes that the statement is not subject to an "innocent construction." (*See* Defendants' Mem. at 7–8.)

In addressing the innocent-construction rule in *Chapski*, the Illinois Supreme Court stated that if, construed pursuant to its natural and obvious meaning, a statement "may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se.*" 149 Ill.App.3d at 762, 102 Ill.Dec. at 888, 500 N.E.2d at 199; *see also Scheidler v. National Organization for Women, Inc.*, 739 F.Supp. 1210, 1218 (N.D.Ill.1990) (Plunkett, J.). Chesters' statement is not reasonably subject to an innocent construction. When a police officer telephones a video store and tells an employee that an individual is in possession of a stolen video card from that store, the natural and obvious meaning of that statement is that the person possessing the stolen card has committed a crime. No reasonable innocent interpretation is possible. Moreover, the alleged statement also cannot be interpreted to refer to someone other than Robert, because the complaint alleges that Chesters identified Robert Weber by name. (Complaint, Count VI, ¶ 18.) However, Chesters argues that the innocent-construction rule still should apply because St. George knew the statement was false. According to Chesters, when "one makes a statement to a person that the person knows to be false, the statement is, *a fortiori*, innocently construed." (Defendants' Mem. at 7.)[6] The *Chapski* decision specifically refutes Chesters' argument, however. There, the Illinois Supreme Court held that, although the initial innocent construction question is one for the court, "whether the publication was in fact understood to be defamatory ... is a

---

6. Chesters provides the Court with no authority for this proposition.

question for the jury." 149 Ill.App.3d at 762, 102 Ill.Dec. at 888, 500 N.E.2d at 199. The Court, therefore, cannot hold as a matter of law that the statement, in fact, was innocently construed.

 Having failed on his innocent construction argument, Chesters next contends that he is entitled to a qualified privilege for statements made in the course of a criminal investigation. Under Illinois law, the elements of a qualified privilege are "(1) good faith by the defendant; (2) an interest or duty to be upheld; (3) a statement limited in its scope to that purpose; (4) a proper occasion; and (5) publication in a proper manner and to proper parties only." *Babb*, 806 F.2d at 753; *see also Heying v. Simonaitis*, 126 Ill.App.3d 157, 81 Ill.Dec. 335, 341, 466 N.E.2d 1137, 1143 (1st Dist.1984); *Fascian v. Bratz*, 96 Ill. App.3d 367, 51 Ill.Dec. 901, 903, 421 N.E.2d 409, 411 (3d Dist.1981); *Judge v. Rockford Memorial Hospital*, 17 Ill.App.2d 365, 377, 150 N.E.2d 202, 207 (2d Dist.1958). Robert contests the existence of a qualified privilege here. The Court need not resolve the privilege question at this stage, however, because any such privilege would be lost if Chesters abused the privilege which the law may afford him. Such abuse can be established by a showing that the defendant made the allegedly defamatory statement with actual malice. *See Babb*, 806 F.2d at 753, 754; *Fascian*, 96 Ill.App.3d 367, 51 Ill.Dec. at 903, 421 N.E.2d at 411. The abuse of privilege question is one of fact. *Babb*, 806 F.2d at 753. In the complaint, Robert alleges that Chesters "acted with deliberate intention to harm" him when he called Blockbuster and made the allegedly defamatory statement. (Complaint, Count VI, ¶ 20.) This allegation, in conjunction with the circumstances in which the statement is alleged to have been made, sufficiently alleges the malice element that would negate any claim of qualified privilege.[7] As a result, Chesters is not entitled to a qualified privilege as a matter

of law, and his motion to dismiss Count VI, therefore, must be denied.

## C. MUNICIPAL AND SUPERVISORY LIABILITY UNDER SECTION 1983.

### 1. Counts VIII & XIV—Municipal Liability.

 The Village moves to dismiss the claims against it on the ground that plaintiffs have failed to sufficiently allege the existence of a municipal policy, custom, or practice that proximately caused the constitutional violation alleged herein. *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Hossman v. Blunk*, 784 F.2d 793, 796 (7th Cir. 1986); *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985); *McLin v. City of Chicago*, 742 F.Supp. 994 (N.D.Ill.1990) (Rovner, J.). In contending that they have sufficiently alleged a municipal policy, plaintiffs rely on the following allegation in their complaint:

> The Defendant, VILLAGE, by and through it's agents, Defendant, ALTERGOT and OTHER UNKNOWN POLICE CHIEFS, failed to properly train Defendant CHESTERS and Defendants OTHER UNKNOWN OFFICERS, amounting to a deliberate indifference to the rights of persons with whom the Defendants came into contact with, including the plaintiff, ROBERT M. WEBER.

(Complaint, Count VIII, ¶ 32; Count XIV, ¶ 31.) This boilerplate allegation is insufficient to state a claim for municipal liability.

To state a claim against a municipality based upon a "policy" allegation, plaintiffs must allege specific facts in support of the allegation:

> [T]o allow otherwise would be tantamount to allowing suit to be filed on a *respondeat superior* basis. Plaintiffs could file claims whenever a police officer abused them, add *Monell* boilerplate allegations, and proceed to discovery in

---

7. The Seventh Circuit has noted that "Illinois apparently has adopted the *New York Times* definition of actual malice, knowledge of falsity or reckless disregard for truth or falsity, and

has merged common law malice, ill will or evil motive, into that standard." *Babb*, 806 F.2d at 755.

the hope of turning up some evidence to support the 'claims' made.

*Strauss,* 760 F.2d at 768; *see also Konaszewski v. Barnett,* 132 F.R.D. 56, 57 (N.D.Ill.1990) (Rovner, J.). In *McLin,* this Court stated that "a single incident of unconstitutional behavior by a municipal employee is insufficient to hold the city liable." *McLin,* 742 F.Supp. at 998. Instead, a plaintiff must allege "a specific pattern or series of incidents that support the general allegation" of a municipal custom or policy. *Hossman,* 784 F.2d at 797; *see also Strauss,* 760 F.2d at 767. Plaintiffs who attempt to proceed under such a policy theory "must plead specific facts which go beyond the boilerplate recital of policy allegations." *McLin,* 742 F.Supp. at 998. Accordingly, "the plaintiff must plead some fact or facts tending to support his allegation that a municipal policy exists that could have caused his injuries." *Strauss,* 760 F.2d at 769.

In the instant complaint, the municipal policy alleged is a failure to "properly train" the defendant Chesters and the other unknown police officers who purportedly failed to intervene. This failure to train purportedly amounted to a "deliberate indifference to the rights of persons" with whom the police officers came into contact. (Complaint, Count VIII, ¶ 32; Count XIV, ¶ 31.)

The Supreme Court recently addressed the circumstances under which inadequate police training can create liability for the municipality under Section 1983. *See City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The Supreme Court held that, in order to be actionable, the failure to train must amount "to a deliberate indifference to rights of persons with whom the police come in contact." *Id.* at 389, 109 S.Ct. at 1205. Although plaintiffs here have pleaded the "catch words" from *Harris* —"failure to properly train" and "deliberate indifference"—they have failed to support these conclusory, boilerplate allegations with any facts about the Village's training program or how that training program caused their injuries. To survive a motion to dismiss, plaintiffs must plead specific facts, in addition to those describing their own incident, which would raise the inference that the Village knew or should have known that its training program posed the risk of conduct such as that alleged by plaintiffs herein. *See Johnson v. City of Chicago,* 711 F.Supp. 1465, 1472 (N.D.Ill.1989) (Moran, J.); *see also Rosentreter v. Munding,* 736 F.Supp. 165, 168 (N.D.Ill.1990) (Aspen, J.). Plaintiffs have failed to plead any facts relating to the Village's training program. They have not even alleged that such a training program exists. Moreover, plaintiffs do not explain how the existing training was inadequate or how the failure to properly train caused the injuries alleged herein. Even assuming the existence of an inadequate training program, plaintiffs have alleged no facts raising the inference that such a program was a "policy" of the Village. *See Harris,* 489 U.S. at 390, 109 S.Ct. at 1205. Instead, plaintiffs have alleged only a single incident without any facts indicating a problem that is systemic in nature. The isolated, intentional acts of Chesters and the other unknown police officers alleged in plaintiffs' complaint are insufficient to state a claim for municipal liability under Section 1983.[8] Accordingly, Counts VIII and XIV must be dismissed.

---

**8.** In their response to the Village's motion, plaintiffs contend that the claims against the municipality should not be dismissed until they have had the opportunity to take discovery on the Village's training policies. (*See* Plaintiffs' Response at 3.) Admittedly, plaintiffs bear a difficult burden in pleading facts necessary to establish the existence of a municipal policy, especially when information relating to any such policy is in the hands of the defendant municipality. To alleviate this problem, some courts have recognized that limited discovery may be necessary in order for plaintiffs to satisfy the policy pleading requirements. *See, e.g.,* *Johnson,* 711 F.Supp. at 1473 n. 5; *Payne v. City of LaSalle,* 610 F.Supp. 606 (N.D.Ill.1985) (Shadur, J.). Before discovery should be permitted, however, plaintiffs must plead some facts relating to the municipality's training program that would indicate how the municipality was deliberately indifferent to the constitutional rights of persons such as plaintiffs. *See Johnson,* 711 F.Supp. at 1473 n. 5. In the present complaint, plaintiffs make only boilerplate allegations relating to a failure to train and deliberate indifference. The factual predicate for those allegations, however, relate only to the specific inci-

### 2. Counts IX & XV—Commander Altergot.

■ Counts IX and XV are brought against Altergot as the commander of the Village police department on the date of the alleged incident. Plaintiffs allege that Altergot failed to properly train Chesters and the other unknown police officers involved in the incident, amounting to a deliberate indifference to plaintiffs' rights. (Complaint, Count IX, ¶ 32; Count XV, ¶ 31.) Altergot has moved to dismiss these claims. It is unclear from the complaint and the briefing on the present motion whether plaintiffs have sued Altergot in his individual or official capacity. In either capacity, however, Altergot and the other unknown police chiefs are entitled to dismissal of the claims against them.

To state a Section 1983 claim against Altergot in his individual capacity, plaintiffs must allege personal wrongdoing on the part of Altergot that contributed to the deprivation of plaintiffs' civil rights. *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988); *Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986); *Powe v. City of Chicago*, 664 F.2d 639, 649 (7th Cir.1981); *McDonald v. State of Illinois*, 557 F.2d 596, 601–02, 603 (7th Cir.), *cert. denied*, 434 U.S. 966, 98 S.Ct. 508, 54 L.Ed.2d 453 (1977). Such personal involvement of supervisory personnel is necessary "because a § 1983 claim may not rest solely upon the theory of respondeat superior." *Hudson v. O'Grady*, 1990 WL 250385, *2, 1990 U.S.Dist.Lexis 17694, *6 (N.D.Ill. Dec. 28, 1990) (Rovner, J.); *see also Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 383–84 (7th Cir.1988); *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983); *Grays v. Bartelt*, 714 F.Supp. 293, 295 (N.D.Ill.1989) (Aspen, J.) ("a plaintiff must allege *facts, not mere conclusions*, demonstrating the supervisor's personal involvement in the unconstitutional activities of subordinates") (emphasis in original). In *Hudson*, this Court described the circumstances in which a supervisor may be liable in his individual capacity as follows:

> personal involvement by a supervisor may be inferred if plaintiff can show that the supervisor had knowledge of a subordinate's activities or was deliberately indifferent to those activities. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir.1982) (personal involvement exists if the official "acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or consent"); *Grays*, 714 F.Supp. at 295. Thus, where a supervisor fails to act in the face of a constitutional deprivation of which the supervisor had knowledge, the supervisor may be personally liable. *Chapman v. Pickett*, 801 F.2d 912, 918 (7th Cir.1986), *vacated and remanded on other grounds*, 484 U.S. 807, 108 S.Ct. 54, [98 L.Ed.2d 19] (1987). "The knowledge that is required is not only that a constitutional deprivation exists but also that the supervisor's personal action is necessary to set it right." *Id.* Once a plaintiff demonstrates knowledge on the part of supervisory personnel, the plaintiff must allege a causal connection or an affirmative link between the conduct of the supervisory personnel and the alleged injury. *Wolf–Lillie*, 699 F.2d at 869; *Hamrick v. Lewis*, 515 F.Supp. 983, 987 (N.D.Ill.1981) (Aspen, J.)

*Hudson*, 1990 WL 250385, at *2, 1991 U.S.Dist.LEXIS 17694, at *6–7.

■ According plaintiffs' complaint the liberal construction that is its due on a

dent at issue herein. No facts are alleged which would indicate a custom or policy of the Village to inadequately train its police officers. Given the paucity of facts on the policy issue, the Court concludes that plaintiffs are not entitled to discovery prior to the dismissal of their claims. A plaintiff should not be entitled to make bare bones allegations of a municipal policy and then utilize the discovery process to provide some cred-

ible basis for those allegations. *See Hudson v. O'Grady*, 1990 WL 250385, *4, 1990 U.S.Dist.LEXIS 17694, *13 (N.D.Ill. Dec. 28, 1990) (Rovner, J.). Of course, if discovery pursuant to plaintiffs' other claims should reveal facts that would support plaintiffs' "policy" allegations, plaintiffs could request leave to amend their complaint to again name the Village as a defendant. *See Konaszewski*, 132 F.R.D. at 57 n. 1.

motion to dismiss, the Court concludes that plaintiffs have failed to allege facts sufficient to show the personal involvement or knowledge of Altergot in the incident at issue herein. There is no indication from plaintiffs' complaint that Altergot had any involvement in or knowledge of Chesters' conduct. Instead, his only involvement is that he allegedly failed to properly train Chesters. This is plainly insufficient under the standards set forth above. Thus, any claim against Altergot in his individual capacity must be dismissed. Because the allegations against the other unknown police chiefs are no more specific than those against Altergot, those claims also must be dismissed.

■ Alternatively, if plaintiffs are attempting to maintain an action against Altergot and the other unknown police chiefs in their official capacities, their claims still must be dismissed. A cause of action under Section 1983 against a city official in his official capacity is treated as an additional claim against the governmental entity for which the individual is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir.1986); *Johnson*, 711 F.Supp. at 1474; *Williams v. City of Chicago*, 658 F.Supp. 147, 153 (N.D.Ill. 1987) (Moran, J.). Hence, the present claims against Altergot and other unknown police chiefs are treated as actions against the Village itself. *See McLin*, 742 F.Supp. at 997. A policy, practice, or custom of the Village giving rise to the alleged constitutional violation must be shown. *Strauss*, 760 F.2d at 767. The Court has concluded above that no such policy has been alleged in the present complaint. That conclusion also applies to the claims against Altergot and the unknown police chiefs in their official capacities. Accordingly, Counts IX and XV also must be dismissed.

## IV. CONCLUSION

For the reasons set forth above, Defendant Chester's motion to dismiss Counts III, IV and VI of plaintiffs' complaint is denied. The Village's motion to dismiss is granted. The claims against the Village are dismissed without prejudice. The Court also grants Commander Altergot's motion to dismiss and sua sponte dismisses the claims against the other unknown police chiefs. Plaintiffs' claims against Altergot and the other unknown police chiefs are dismissed with prejudice.